NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

CASSANDRA P., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.P., *Appellees*.

No. 1 CA-JV 14-0123

FILED 09-23-2014

---

Appeal from the Superior Court in Maricopa County
No. JD14852
The Honorable Connie Contes, Judge

**AFFIRMED**

---

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Donn Kessler joined.

---

**C A T T A N I**, Judge:

¶1          Cassandra P. ("Mother") appeals from the superior court's order terminating her parental rights as to her son J.P.  Mother argues the court erred by terminating her parental rights based on length of felony sentence and by declining to offer her a "less restrictive alternative" than severance.  For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2          J.P., born in November 2012, is the biological son of Mother and Joseph F. ("Father").[1] Mother had three other biological children before J.P.: one was adopted soon after birth, one is in a permanent guardianship with Mother's grandmother, and one resides with his father and his father's family pursuant to a sole custody/guardianship arrangement.  The Department of Child Safety ("DCS")[2] took J.P. into custody in June 2013 when Mother was arrested on drug charges.  Two months later, the superior court found J.P. to be dependent as to Mother.  Although Mother has requested visitation, she has not been permitted in-person contact with J.P. since her arrest.

¶3          Mother's current felony convictions stem from two separate incidents.  In May 2013, Mother was found with methamphetamine, a digital scale, and $1,165 in her purse; she was arrested for possession and sale of dangerous drugs.  Two months later, in June 2013, Mother was again

---

[1]      Although involved in the superior court proceedings, Father is not a party to this appeal.

[2]      Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), DCS has replaced the Arizona Department of Economic Security ("ADES") in this matter.  For consistency, we refer to DCS in this decision even where, at the time, actions were taken by ADES.

arrested for possession of methamphetamine when police found the drug in her apartment; J.P. was in the apartment at the time.

¶4            Mother eventually entered guilty pleas to conspiracy to commit sale or transportation of dangerous drugs (arising from the May incident) and to possession or use of dangerous drugs (arising from the June incident). She was sentenced to concurrent terms of imprisonment, the greater of which is four years. Mother's scheduled release date is in June 2017, although she may be eligible for early release in September 2016 or through a transition program in June 2016.

¶5            After Mother's arrest, a DCS case manager contacted her and encouraged her to participate in services available during her incarceration. Mother in fact participated in substantial services in prison, including a series of classes addressing life skills, parenting, domestic violence, and reentry; a program addressing addictive behavior; Narcotics Anonymous; and distance learning college courses.

¶6            Mother testified that, prior to her arrest, she had a very strong bond with J.P. Father characterized Mother as a good and attentive mother to J.P. prior to her incarceration, but Father acknowledged he was aware that Mother was using methamphetamine during that time period. Although DCS did not perform a bonding assessment, the case manager expressed doubt about the strength of the relationship between Mother and J.P. because of J.P.'s age (under seven months old at the time of Mother's arrest). The case manager also expressed concern that, due to Mother's incarceration, she would not be able to "be there for [J.P.] day to day. She can't meet his basic needs while she's incarcerated." Although Mother requested visitation with J.P., DCS did not schedule in-person visits because a mental health professional who conducted a psychological evaluation concluded that visitation would not be in J.P.'s best interests due to his young age and the length of time Mother would remain incarcerated. Mother's half-sister, with whom J.P. had been placed, was not independently willing to facilitate visits in prison. Mother has sent J.P. cards, gifts, and letters while she has been incarcerated.

¶7            After a severance hearing, the superior court terminated Mother's parental rights as to J.P. on the ground that Mother's felony sentences would deprive J.P. of a normal home for a period of years. *See*

Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(4).[3]  Mother timely appealed, and we have jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

¶8        The superior court may terminate the parent–child relationship if clear and convincing evidence establishes at least one statutory ground for severance and if a preponderance of the evidence shows severance to be in the child's best interests.  A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005).  We review the superior court's severance ruling for an abuse of discretion, accepting the court's factual findings unless clearly erroneous and viewing the evidence in the light most favorable to sustaining the court's findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App. 2004); *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2, 181 P.3d 1126, 1127 (App. 2008).  We similarly defer to the superior court's credibility judgments.  *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002).

¶9        The statutory ground of severance due to length of felony sentence requires proof that an incarcerated parent's sentence "is of such length that the child will be deprived of a normal home for a period of years."  A.R.S. § 8-533(B)(4).  The length of a parent's sentence alone is not dispositive.  *Jesus M.*, 203 Ariz. at 281, ¶ 9, 53 P.3d at 206.  Instead, the superior court must engage in a fact-intensive analysis of all relevant circumstances, including consideration of six factors set forth by our supreme court in *Michael J. v. Arizona Department of Economic Security*:

> (1) the length and strength of any parent–child relationship existing when incarceration begins, (2) the degree to which the parent–child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

196 Ariz. 246, 251–52, ¶ 29, 995 P.2d 682, 687–88 (2000).  Although the court must consider each of these factors, it is not required to make explicit factual

---

[3]        Absent material revisions after the relevant date, we cite a statute's current version.

findings regarding each one. *Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 441, ¶ 14, 323 P.3d 720, 724 (App. 2014).

¶10        Mother argues that the court erred by determining severance was warranted due to the length of her felony sentence.[4] She argues that she had a strong relationship with J.P. prior to incarceration, that she could (with visitation) build the relationship even while in prison, and that her sentence was relatively short. Although Mother's testimony suggests that she has performed admirably by participating in services and by pursuing educational opportunities while incarcerated, the record nevertheless supports the superior court's severance ruling.

¶11        Even accepting that Mother's bond with J.P. was strong, their pre-incarceration relationship was of only short duration, since J.P. was under seven months old when Mother was arrested and taken into custody. Nurturing the relationship during Mother's incarceration would be difficult at best. And the mental health professional who conducted a psychological evaluation recommended against visitation while Mother remained incarcerated. Although Mother regularly sent J.P. cards, letters, and gifts, given J.P. young age, written correspondence can provide only a limited connection and bond.

¶12        Mother's incarceration will deprive J.P. of a stable home life. J.P. was under seven months old when Mother was arrested and will be over four and one-half years old by the time Mother is scheduled to be released. Even at the time of Mother's earliest possible release in June 2016, J.P. would be over three and one-half years old and would have lived without any parent for almost three years. Although Mother characterizes her four-year sentence as "relatively short," it nevertheless spans "a period of years."

¶13        Additionally, because the terms of Father's lifetime probation prohibit any contact with J.P., there is no other parent available to care for J.P. while Mother is incarcerated. Accordingly, and because Mother's incarceration prevents her from meeting J.P.'s basic needs, the record supports the superior court's conclusion that severance was warranted under A.R.S. § 8-533(B)(4) based on the length of Mother's felony sentence.

¶14        Mother argues that the superior court erred by failing to offer a "less restrictive alternative" than severance. She suggests that, if J.P. were

---

[4]        Mother's argument focuses only on the statutory ground for severance; she does not contest the superior court's best interests finding.

placed with maternal grandmother rather than Mother's half-sister, the grandmother would facilitate visitation, which in turn would foster the relationship between J.P. and Mother. Even assuming that the court should consider a less restrictive alternative to termination of parental rights, Mother's suggestion is simply too speculative, and she does not address the concerns raised in the psychological consultation recommending against visitation. Nor does Mother address the fact that J.P.'s grandmother, who cared for him for a few days immediately after Mother's arrest, suggested that J.P.'s aunt "was better equipped to care for [J.P.] at that time."

## CONCLUSION

**¶15** For the foregoing reasons, we affirm the superior court's order terminating Mother's parental rights as to J.P.



**Ruth A. Willingham** · Clerk of the Court
F I L E D : gsh