NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ASHLYN H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY,[1] A.O., *Appellees*.

No. 1 CA-JV 14-0254
FILED 3-5-2015

Appeal from the Superior Court in Maricopa County
No. JD23026
The Honorable Linda H. Miles, Judge

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Phoenix
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee*

---

[1]     Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety (DCS) is substituted for the Arizona Department of Economic Security (ADES) in this matter. *See* ARCAP 27. For consistency, we refer to DCS in this decision even where, at the time, actions were taken by ADES.

Law Office of Alicia Montoya-Sanchez
By Alicia Montoya-Sanchez
*Guardian Ad Litem for Child*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge John C. Gemmill and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

**¶1**　　　　Ashlyn H. (Mother) appeals from the trial court's order terminating her parental rights to A.O. (Child) on the statutory ground of incarceration for a felony conviction that is "of such length that [Child] will be deprived of a normal home for a period of years."　Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(4).[2]　For the following reasons, we affirm.

## FACTS[3] AND PROCEDURAL HISTORY

**¶2**　　　　Mother is the biological parent of Child, born August 18, 2010. At the time of Child's birth, Mother had outstanding felony arrest warrants, and for the next five months, consciously evaded arrest while Child was in her care.　On January 25, 2011, after a brief chase and mild stand-off, Glendale police officers apprehended and arrested Mother.　Before her arrest, Mother arranged for Child's Father and paternal grandmother to pick up Child.　DCS left Child in Father's care at that time.

**¶3**　　　　Mother was initially incarcerated at the Maricopa County Jail. In March 2011, Mother pleaded guilty to one count of theft of a means of transportation, and was sentenced, in April 2011, to 6.5 years' imprisonment.　She was transferred to the Arizona Department of Corrections (DOC) to serve the remainder of her sentence.

---

[2]　　　Absent material revisions from the relevant date, we cite a statute's current version.

[3]　　　We view the facts in the light most favorable to upholding the termination order.　*Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 449, ¶ 12, 153 P.3d 1074, 1078 (App. 2007) (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13, 53 P.3d 203, 207 (App. 2002)).

¶4        While in jail, Mother had weekly phone contact with Child, and Father brought Child to visit her.  Once Mother was transferred to DOC, visits ceased because no one was available to transport Child, but Mother maintained phone contact with Child while she was in Father's care.

¶5        Child was removed from Father's care, however, in December 2012.  After voluntarily agreeing to participate in a rule-out drug screening in September 2012 as part of an investigation regarding two children from another relationship, Father instead fled with Child.  DCS was unable to locate Father until December 19, when he was arrested at paternal grandmother's residence on an outstanding warrant.  Child was ultimately placed with a paternal cousin six days later.  Thereafter, Child was found dependent as to Mother and Father, and the case plan was set as family reunification concurrent with severance and adoption.

¶6        As part of the dependency, Mother was asked to "participate in any classes offered in prison that will help her parent appropriately and live a sober life when released."  Mother followed DCS's direction, earning certificates of completion for Graphic Arts from Rio Salado College, completing prison programs on cultural diversity and cognitive restructuring, and participating in a Life-Changing Class, which focused on re-entry into society, domestic violence, and parenting skills.  Mother also maintained employment while incarcerated.

¶7        Mother was not, however, offered visitation with Child in prison because of Child's young age, as well as the recommendation of Dr. DiBacco, a psychologist, that visits could be damaging to Child and cause her to regress.[4]  Mother agreed with the recommendation and instead maintained contact with Child by sending numerous letters and cards, each of which was provided to Child.

¶8        In August 2013, prompted by Father's continued failure to comply with services, the trial court granted DCS's motion to change the case plan to severance and adoption. Shortly thereafter, in September 2013, DCS moved to terminate Mother and Father's parental rights.  After a one-day trial in July 2014, the court determined DCS had proven by clear and

---

[4]        Dr. DiBacco's recommendation was based in part upon Child's adverse behavioral reactions to prior visits with Father, with whom she had a more established relationship.

convincing evidence that Mother's felony conviction would deprive Child of a stable home for a period of years, and proven by a preponderance of the evidence severance would be in Child's best interest. Accordingly, it terminated Mother's parental rights to Child.[5] Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21, and 12-2101(A)(1).

## DISCUSSION

¶9 To terminate a parent-child relationship, the trial court must find that clear and convincing evidence supports one of the statutory grounds for severance. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005); A.R.S. § 8-533(B). Additionally, the court must determine by a preponderance of the evidence that termination of the relationship is in the child's best interests. *Kent K.*, 210 Ariz. at 284, ¶ 22, 110 P.3d at 1018. We review a trial court's termination order for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App. 2004) (citing *Maricopa Cnty. Juv. Action No. JV-132905*, 186 Ariz. 607, 609, 925 P.2d 748, 750 (App. 1996)). We will therefore accept the court's findings of fact unless no reasonable evidence supports them. *Jesus M.*, 203 Ariz. at 280, ¶ 4, 53 P.3d at 205.

¶10 A parent's rights may be terminated if that "parent is deprived of civil liberties due to the conviction of a felony if . . . the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4). There is "no 'bright line' definition of when a sentence is sufficiently long to deprive a child of a normal home for a period of years." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 29, 995 P.2d 682, 687 (2000). Rather, the inquiry is individualized and fact-specific, and requires the court to consider "all relevant factors," which include, but are not limited to:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to

---

[5] Father's parental rights to Child were also terminated. He did not appeal the severance order, and is not a party to this case.

> provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Id.* at 251-52, ¶ 29, 995 P.2d at 687-88. The trial court here stated it had considered the above-referenced factors, and concluded they collectively weighed in favor of terminating Mother's parental rights.

¶11 The sole argument made by Mother on appeal is that insufficient evidence supports the second *Michael J.* factor — "the degree to which the parent-child relationship can be continued and nurtured during the incarceration." While acknowledging that not every factor need be affirmatively found to justify severance, *Christy C.*, 214 Ariz. at 450, ¶ 15, 153 P.3d at 1079, Mother argues that the trial court erred by relying upon an erroneous finding to support its termination of Mother's parental rights. Mother's argument focuses on DCS's failure to provide her visitation in prison. She claims that if DCS had provided visitation, her relationship with Child could have been nurtured during her incarceration.

¶12 Mother's argument, however, ignores her own testimony. At the severance hearing, Mother stated that she agreed with DCS's decision not to provide visitation in prison with Child based upon "what the therapist, the doctor, said about that it was going to throw her into transgression and . . . cause her behavioral problems again." Following mediation regarding the dependency petition, DCS submitted "ASFA Findings RE: Reasonable Efforts to Finalize the Permanency Plan," which requested Mother receive only services available to her while in custody, and did not request visitation. The trial court adopted DCS's ASFA findings, specifically noting that no objection had been lodged against them. Further, at subsequent report and review hearings, the court found, again without any objections from Mother, that DCS had made reasonable efforts to finalize the permanency plan for Child. Therefore, the record demonstrates Mother made a conscious decision not to subject Child to visitation in prison. *See Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235 n.8, ¶ 15, 256 P.3d 628, 632 n.8 (App. 2011) (indicating a parent may waive argument that DCS failed to provide adequate services when the parent does not request additional services or otherwise object to the manner court-ordered services are provided). Accordingly, we find no error.

¶13 Notwithstanding Mother's agreement regarding services, the trial court's finding is supported by other reasonable evidence that the parent-child relationship could not be nurtured during Mother's incarceration. Mother cared for Child only for the first five months of her

life. Once incarcerated in January 2011, Mother had some in-person visits with Child, and maintained weekly phone contact until December 2012. Throughout her incarceration, Mother also sent gifts, letters, and cards to Child. *See Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 442, ¶ 19, 323 P.3d 720, 725 (App. 2014) (acknowledging that, under some circumstances, a court could reasonably find that a parent-child relationship could be built through telephone calls and letters while the parent awaited release from incarceration). Despite these contacts, the DCS case manager testified that Child was unaware of who Mother was, and did not view her as her mother. Given this lack of relationship, the DCS case manager testified that introducing Child to Mother in prison during limited visits would not create a bond between them.

¶14         Moreover, even assuming the second factor weighed in Mother's favor, the evidence presented at trial provided a reasonable basis for the trial court to conclude the remaining factors, which Mother does not contest on appeal, weighed in favor of termination. *See Christy C.*, 214 Ariz. at 450, ¶ 15, 153 P.3d at 1079 ("[T]here is no threshold level under each individual factor in *Michael J.* that either compels, or forbids, severance."). Mother and Child did not have a strong relationship at the outset of Mother's incarceration, as Mother only cared for Child from birth to five months and was actively evading arrest at that time. By the time of trial, Child was almost four years old and residing with a relative placement. Mother conceded her 6.5 year sentence deprived her of her civil liberties for an extended period of time, including the vast majority of Child's life. And, as noted above, *see infra* ¶ 8 n.6, Father's rights were also terminated, leaving no other biological parent available to provide a normal home for Child. *See Maricopa Cnty. Juv. Action No. JS-5609*, 149 Ariz. 573, 575, 720 P.2d 548, 550 (App. 1986) (noting "normal home" refers to the parent's own obligation to provide a normal home in which he maintains a presence). Finally, Mother's incarceration has allowed Child to grow especially close to her relative placement, whom she now views as her family.

¶15         Mother has made commendable efforts to comply with DCS's request that she participate in classes while in prison and communicate with Child. However, because reasonable evidence supported the trial court's determination that Mother's sentence would deprive Child of a

normal home for a period of years, the trial court did not abuse its discretion in terminating Mother's parental rights on this statutory ground.[6]

## CONCLUSION

**¶16**         Based upon the foregoing, we affirm the trial court's termination order.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

---

[6]     Mother does not challenge the trial court's finding that severance would be in Child's best interests.  Therefore, we do not address it.  *Michael J.*, 196 Ariz. at 249, ¶ 13, 995 P.2d at 686 (accepting trial court's best interest finding where parent failed to challenge it on appeal).