NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JESSICA H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, X.H., *Appellees*.

No. 1 CA-JV 14-0201
FILED 6-11-2015

Appeal from the Superior Court in Maricopa County
No. JD21461
The Honorable William R. Wingard, Judge Pro Tempore

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Michael F. Valenzuela
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Michael J. Brown joined.

---

**O R O Z C O**, Judge:

¶1            Jessica H. (Mother) appeals from the termination of her parental rights to X.H. (Child).  For the following reasons, we affirm the juvenile court's termination order.

## FACTS AND PROCEDURAL BACKGROUND

¶2            Child was born premature in January 2012.  At the time of Child's birth, the Department of Child Safety (DCS) received a report that Mother tested positive for methamphetamine.  DCS attempted to speak with Mother, but was initially unsuccessful for various reasons.  DCS eventually spoke with Mother and inspected her home.  In mid-February 2012, DCS took Child into custody and filed a dependency petition that alleged Mother was neglecting Child due to substance abuse and failing to provide basic necessities.  The juvenile court found Child dependent as to Mother in September 2012,[1] and adopted a family reunification case plan.  Mother agreed to a reunification plan that included parent aide services, a psychological consultation, a substance abuse assessment/treatment program, drug testing—including hair follicle and random tests—supervised visitation, and an agreement that Mother would follow the reasonable recommendations of any evaluation and assessment.

¶3            Child's court-appointed guardian ad litem (GAL) filed a motion to terminate the parent-child relationship several weeks after the dependency determination, citing Arizona Revised Statutes (A.R.S.) section 8-533.B.8(b), six months' time in an out-of-home placement.  An amended petition later alleged termination also was proper under A.R.S § 8-

---

[1]      This court affirmed the dependency finding in 2013.  *See Jessica H. v. Ariz. Dep't of Econ. Sec.*, 1 CA-JV 12-0205, 2013 WL 709669 (Ariz. App. Feb. 26, 2013) (mem. decision).

533.B.8(c), fifteen months' time in an out-of-home placement. A multi-day severance trial concluded in May 2014.

¶4        At trial, Mother testified that she was aware of her positive test for methamphetamine at the time of Child's birth, but denied she ever used the drug. Mother also admitted that she was aware that she tested positive for methamphetamine and cocaine at the time she gave birth to another child, which occurred during the course of Child's severance proceedings. Mother further testified that she was offered services by DCS, including random drug testing, a drug treatment assessment, psychological evaluation, parenting aid, visitation, and others. Mother stated that she did not begin drug testing services until six months after they were offered because she believed participation was optional. Once Mother began participating, she admitted she missed several tests. Mother also stated she was aware that a hair follicle test she completed came back positive for methamphetamine. Mother asserted that "the only explanation [she] could think of" was that the positive tests were the result of other drugs she was taking for medical reasons. Mother admitted that she did not comply with court orders for further hair follicle tests. Nevertheless, Mother believed she had substantially complied with the services offered by DCS.

¶5        DCS presented the psychological evaluation report of Shane T. Hunt, Ed.D at trial. Dr. Hunt testified that Mother did not disclose to him any drugs she was taking for her medical conditions at the time of his evaluation. Dr. Hunt also diagnosed Mother with histrionic personality traits and Somatoform Disorder, and stated that "the individual with those types of personality traits seek out attention. They really like to be the center of attention." Dr. Hunt additionally testified that apart from drug testing, Mother had complied with other DCS services such as visitation and individual counseling. Dr. Hunt stated, however, that "the biggest concern I have is with the amphetamine [use] itself."

¶6        The assigned DCS caseworker testified that, in addition to the hair follicle tests that produced positive results for methamphetamine, Mother also tested positive for methamphetamine during intake for a substance abuse treatment program. The caseworker further testified that Child was taken into DCS custody because Child was "[s]ubstance exposed at birth." Although Mother was referred for additional services through her treatment program, Mother did not complete them. The case worker acknowledged that Mother had received several "clean" results on urine analysis (UA) drug tests, and the case worker testified that DCS had accordingly requested Mother take observed UA tests to help DCS reconcile the record of "clean" tests with the hair follicle tests that were positive for

methamphetamine. When DCS requested Mother take observed UA tests, Mother would not participate in any further UA testing.

¶7 During one of the termination proceedings in May 2014, DCS presented testimony that Mother had ignored three court orders, issued at separate times throughout the proceeding, to complete an additional hair follicle test.[2] Over the course of the termination proceeding, DCS continued to offer services, including referrals to drug treatment programs, a psychiatric evaluation, and an updated psychological evaluation. Mother either failed to participate in these services or did so minimally.

¶8 The juvenile court terminated Mother's parental rights, finding that, pursuant to A.R.S. § 8-533.B.8(b), clear and convincing evidence established that Child was under three years of age, was in an out-of-home placement for six months or longer, and pursuant to A.R.S. § 8-533.B.8(c), clear and convincing evidence established Child was in an out-of-home placement for fifteen months or longer. The juvenile court also found by a preponderance of evidence that severance was in Child's best interests, noting that Child "would be at risk of abuse or neglect" if placed in Mother's care and that Child was in a foster care placement that was willing to adopt and would provide Child with permanency and stability. Mother timely appealed and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S §§ 8-235.A, 12-120.21.A.1, and -2101.A (West 2015),[3] and Arizona Rule of Procedure for the Juvenile Court 103(A).

**DISCUSSION**

¶9 Terminating parental rights has two elements. *See* A.R.S. § 8-533.B (West 2015). First, clear and convincing evidence must establish one of the statutory grounds in A.R.S. § 8-533.B. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). Second, the juvenile court must find by a preponderance of evidence that severance is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 42 (2005). In reviewing a termination order, we will not reweigh the evidence, and we view all

---

[2] Mother testified she paid for a hair follicle test herself after the court ordered her to take one in February 2014. She did not have a receipt or provide one to DCS, however.

[3] We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

evidence in the light most favorable to sustaining the juvenile court's rulings. *Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 440, ¶ 12 (App. 2014). We will affirm the juvenile court's findings unless no reasonable evidence supports them. *Id.*

**¶10**      The first issue raised on appeal by Mother concerns the reunification services offered by DCS. However, Mother did not object in juvenile court to the sufficiency of services provided by DCS. Because the juvenile court found that DCS "made diligent and reasonable efforts to provide reunification services," Mother has waived this issue on appeal. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178-79, ¶ 16 (App. 2014) (noting that parents must "voice their concerns about services" in a "timely manner" and failing to do so precludes arguing on appeal that services were inadequate).[4]

**¶11**      Mother next argues the juvenile court erred in finding clear and convincing evidence supported the statutory grounds for termination. Because we conclude termination was proper pursuant to A.R.S. § 8-533.B.8(b), we do not analyze Mother's argument pertaining to A.R.S. § 8-533.B.8.(c).

**¶12**      It is uncontested that Child was under three years old and in an out-of-home placement for six months or longer when termination was sought. Mother thus contends that the evidence presented by DCS does not establish her willful refusal to remedy the circumstances causing Child's out-of-home placement. *See* A.R.S. § 8-533.B.8(b). Instead, she asserts that she substantially complied with the reunification services such that the clear and convincing evidence standard was not met. On this record, Mother has not shown that the juvenile court's findings are clearly erroneous.

**¶13**      The record reflects that Mother engaged in a pattern of evasion and non-compliance concerning the reunification services in which she agreed to participate. Mother's argument of substantial compliance is unavailing; substantial neglect or willful refusal "is not limited to those who

---

[4]      Mother's opening brief also does not comply with the requirements of Arizona Rule of Civil Appellate Procedure 13(a)(7), which states that "contentions concerning each issue presented for review" must contain "citations of legal authorities and appropriate references to the portions of the record on which the appellant relies." Although Mother cites relevant case law, she fails to cite the record in arguing the services offered by DCS were inadequate.

have *completely* neglected or willfully refused to remedy" the circumstances causing out-of-home placement. *See Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 576 (App. 1994). Severance may be appropriate even when a parent "eventually begins a successful recovery before the severance hearing[.]" *Id.* at 577. Here, although Mother asserts she does not have a substance abuse problem, there is credible evidence that indicated otherwise and she did not take the conclusive steps necessary to complete the services that would have either exonerated her claims or provided the help she needed. Accordingly, the juvenile court did not err in finding clear and convincing evidence that Mother substantially neglected or willfully refused to remedy the circumstances causing Child's out-of-home placement.

¶14        Mother also challenges the juvenile court's best interests finding. To find best interests for termination, a juvenile court must conclude "either that the child will benefit from the termination of the relationship or that the child would be harmed by continuation of the relationship." *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18 (App. 1998). Making a best interests determination necessarily obliges the juvenile court to balance the fundamental liberty interest a parent has to control and care for his or her child and the child's fundamental interest in a "normal family home." *Kent K.*, 210 Ariz. at 286, ¶ 34 (citation omitted).

¶15        Here, the juvenile court found that severance was in Child's best interest because Child would benefit from a safe, stable and permanent home and that severance would provide Child with the opportunity to be adopted in a placement that will continue providing considerable and necessary care. The record reflects that Child's premature and substance-exposed birth left Child needing physical and behavioral therapies. Accordingly, the juvenile court did not err in finding by a preponderance of evidence that severance was in Child's best interests.

## CONCLUSION

¶16        We affirm the order terminating Mother's parental rights.

