IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, *Appellant*,

*v.*

ROCKY J., O.K., *Appellee.*

Nos. 1 CA-JV 13-0255, 1 CA-JV 13-0294 (Consolidated)
FILED 4-10-2014

Appeal from the Superior Court in Maricopa County
No. JD13879
The Honorable Daniel G. Martin, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Erika Z. Alfred
*Counsel for Appellant*

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellee*

---

## OPINION

Judge Randall M. Howe delivered the opinion of the Court, in which Acting Presiding Judge John C. Gemmill and Judge Jon. W. Thompson joined.

---

**H O W E**, Judge:

**¶1**        The Arizona Department of Economic Security (ADES) appeals the juvenile court's denial of its motion to terminate Rocky J.'s (Father) parental rights to O.K. (Child). ADES argues that the juvenile court erred in not finding that Father's incarceration would deprive Child of a normal home for a period of years under A.R.S. § 8–533(B)(4) by (1) improperly considering Father's anticipated release date from prison instead of the entire length of his sentence and (2) failing to apply the *Michael J.*[1] factors. We affirm the juvenile court's ruling. The court was aware of the length of Father's sentence and reasonably concluded that Father's impending anticipated release date was a critical fact in determining that termination was not proven under § 8–533(B)(4). Further, the court was not required to make specific findings on the record regarding the *Michael J.* factors, and the factors support the juvenile court's ruling that termination was not warranted.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Jessica K. (Mother), who was unmarried, gave birth to Child in September 2001. Father was incarcerated in New Mexico at the time of Child's birth. Mother wrote to Father informing him of Child's birth, and Father asked for a photograph of Child but never received one. Although Father initially had Mother's post office box address, he lost contact once "the number ran out."

**¶3**        Child lived with Mother for six months, but thereafter lived with her maternal grandmother (Grandmother). When Father learned that

---

[1]        *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 995 P.2d 682 (2000).

Child lived with Grandmother, Father made collect phone calls and wrote letters to Child. Grandmother did not give the letters to Child, however.

¶4            Mother abandoned Child in 2004, and in March 2005 the juvenile court adjudicated Child dependent because of Mother's abandonment and Father's incarceration. At the dependency hearing, Father agreed to the dependency, but denied the allegations in the ADES's dependency petition. Mother did not appear at the hearing. The juvenile court adjudicated Child dependent, placed Child in ADES's care and custody, and initiated a reunification case plan. Father called and wrote to Child while she was in ADES's care.

¶5            In May 2006, Father was released from prison and asked to serve his parole in Arizona with the intention of regaining custody of Child. He was not allowed to do so because he had no immediate family in Arizona; instead, he was allowed to serve his parole in Nevada, where his sister lived. While there, he was convicted of burglary in December 2006 and sentenced to 12.5 years imprisonment with parole eligibility after 5 years. Upon Father's release on parole, he violated his release conditions and was again incarcerated in Nevada.

¶6            In April 2007, Grandmother was appointed Child's guardian. Father then wrote multiple letters to the juvenile court requesting contact with Child. The court denied Father's request, finding that "visitation between [Child] and her parents shall be at the discretion of [Child's] permanent guardian." Father's sister contacted Grandmother to ask if Father could have contact with Child, but Grandmother refused. Father nevertheless wrote letters to Child and participated in a prison program that provided a Christmas gift to Child.

¶7            In April 2012, ADES filed a second dependency petition, stating that Grandmother was no longer willing to care for Child because of Child's behavior. On April 30, 2012, the court found Child dependent as to Grandmother. In May 2012, Father wrote to the juvenile court, stating that he opposed the termination of his parental rights to Child. Father claimed that he had not been allowed to contact Child for the past seven years and admitted that Child did not know him. Father wrote letters to Child, but they were not delivered to her because her therapist deemed that it was not in her best interest.

¶8            In January 2013, ADES moved to terminate Father's and Mother's parental rights to Child pursuant to A.R.S. § 8-533(B)(1) and (B)(4), claiming that they had each abandoned Child and that the length of

Father's imprisonment would deprive Child of a normal home for a period of years. ADES sought severance so that Grandmother could adopt Child. Although Grandmother had asked for her guardianship of Child to be revoked in April 2012, Grandmother had a change of heart because Child had matured since that time and had improved behavior.

¶9 At the severance hearing, Father testified that he would be released from prison no later than April 2014 and that he had arranged for transitional housing after his release. Father admitted that he did not have a relationship with Child, although he had attempted to write to her on every holiday and arranged to have gifts sent to her on Christmas. He also testified that in 2005 he spoke to Child once a week by telephone.

¶10 On September 10, 2013, the juvenile court terminated Mother's parental rights because she had failed to appear after proper notice and thus waived her right to contest the termination.[2] The court, however, refused to terminate Father's parental rights. The court found that Father had not abandoned Child because although he had been unable to parent Child, he had made "substantial efforts to communicate" with Child and "strongly desire[d] to establish a relationship with her." The court also found that Grandmother had prevented him from having meaningful contact with Child. The court found that Father's imprisonment would not deprive Child of a normal home because Father would be released from prison in April 2014. The court noted that although Father might be on parole after his release from prison and would need to demonstrate an extended period of sobriety, these time periods did not justify the termination of Father's parental rights. Because the court found no grounds for terminating Father's parental rights, it did not conduct a best-interest analysis.

¶11 On September 24, 2013, ADES filed a notice of appeal. That same day, ADES moved for reconsideration, arguing that the court erred by failing to consider the entire length of Father's sentence, his maximum release date, and the six *Michael J.* factors. On September 27, 2013, the court denied ADES's motion for reconsideration in an unsigned minute entry. The court issued a signed order denying ADES's motion for

---

[2] Mother did not appeal the ruling and is not a party to this appeal.

reconsideration on October 30, 2013. On November 8, 2013, ADES filed a second notice of appeal.[3]

## DISCUSSION

**¶12** ADES argues that the juvenile court erred in finding that ADES failed to prove by clear and convincing evidence that Father's parental rights should have been terminated under § 8–533(B)(4) because the length of Father's prison sentence will deprive Child of a normal home for a period of years.[4] We view the evidence in a severance case in the light most favorable to sustaining the juvenile court's findings and will affirm unless, as a matter of law, no reasonable evidence supports those findings. *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 95 ¶ 10, 210 P.3d 1263, 1266 (App. 2009). Because the trial court is "in the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings," *Pima Cnty. Dependency Action No. 93511*, 154 Ariz. 543, 546, 744 P.2d 455, 458 (App. 1987), this Court will not reweigh the evidence, *Maricopa Cnty. Juv. Action No. JV–132905*, 186 Ariz. 607, 609, 925 P.2d 748, 750 (App. 1996). Additionally, we review de novo legal issues requiring the interpretation and application of § 8–533. *See Ariz. Dep't of Econ. Sec. v. Ciana H.*, 191 Ariz. 339, 341 ¶ 11, 955 P.2d 977, 979 (App. 1998).

**¶13** Termination of parental rights is appropriate only when clear and convincing evidence proves a statutory ground for termination, *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 449 ¶ 12, 153 P.3d 1074, 1078 (App. 2007), and a preponderance of the evidence shows that termination is in the child's best interest, *Kent K. v. Bobby M.*, 210 Ariz. 279,

---

[3] Father argues that ADES's September 21, 2013, notice of appeal divested the juvenile court of jurisdiction to consider ADES's motion for reconsideration filed the same day, which precludes this Court from considering ADES's subsequent appeal from the denial of the motion for reconsideration. We need not decide this question because the issue raised in the motion for reconsideration and on the appeal from its denial—whether the juvenile court erred in finding that ADES did not prove by clear and convincing evidence that severance was required under § 8–533(B)(4)—is wholly encompassed within the first appeal from the juvenile court's initial denial of the severance petition.

[4] ADES does not challenge the juvenile court's ruling that ADES failed to prove abandonment as a grounds for termination.

284 ¶ 22, 110 P.3d 1013, 1018 (2005). One ground for termination is that "the parent is deprived of civil liberties due to the conviction of a felony if . . . the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." § 8–533(B)(4).

¶14        Section 8–533(B)(4) provides "no 'bright line' definition of when a sentence is sufficiently long to deprive a child of a normal home for a period of years," and each case depends on its particular facts. *Michael J.*, 196 Ariz. at 251 ¶ 29, 995 P.2d at 687. In making this determination, "all relevant factors," should be considered, which include the following:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Id.* at 251–52 ¶ 29, 995 P.2d at 687–88. The juvenile court is not required, however, to make findings on the record regarding each of these factors. *Christy C.*, 214 Ariz. at 452 ¶ 19, 153 P.3d at 1081. We will affirm the juvenile court's ruling if the facts support the ruling "whether or not each supportive fact is specifically called out by the trial court in its findings." *Id.* at 451-52 ¶ 19, 153 P.3d at 1080-81. "[T]he juvenile court will be deemed to have made every finding necessary to support the judgment." *Ariz. Dep't of Econ. Sec v. Matthew L.*, 223 Ariz. 547, 549 ¶ 7, 225 P.3d 604, 606 (App. 2010).

¶15        In ruling that ADES had failed to prove by clear and convincing evidence that Father's sentence would deprive Child of a home for a period of years, the juvenile court relied on Father's impending release from prison in less than a year from the severance trial. Because the evidence showed that Father was expected to be released on parole in April 2014, just over seven months from the date of the severance trial, the court reasonably concluded that ADES had failed to prove that Child would be deprived of a home for a period of years, even if Father would have to spend a period of time in a half-way house after his release.

**¶16**        Although ADES argues that the juvenile court erred by considering only the length of time between the severance trial and Father's release and not the length of Father's sentence or maximum release date, nothing shows that the court failed to appreciate the original length of the sentence or the maximum release date of 2018. The juvenile court was not required to expressly note them in its ruling, *Christy C.*, 214 Ariz. at 452 ¶ 19, 153 P.3d at 1081 (holding that express findings on *Michael J.* factors not required), and moreover, because the court denied the petition to terminate Father's rights, it was not required to make any findings at all, *Matthew L.*, 223 Ariz. at 549–50 ¶ 10, 225 P.3d at 606–07 (recognizing that A.R.S. § 8–533(A) does not require the juvenile court "to make findings when denying a motion to terminate the parent-child relationship"). ADES presented testimony about the length of Father's sentence and maximum release date and argued that this supported termination. The failure to persuade the court that this justified termination—in the face of Father's impending release from prison—does not mean that the court failed to consider Father's sentence. An anticipated release date is a relevant factor in determining whether a child will be deprived of a normal home for a period of years. *Matthew L.*, 223 Ariz. at 550 ¶ 15, 225 P.3d at 607 (holding that "[a]s long as the juvenile court considers the length of sentence, we find no error for it to also consider the anticipated release date."). The juvenile court did not err.

**¶17**        ADES nevertheless argues that the juvenile court erred in its ruling against termination because "all six of the *Michael J.* factors supported termination of Father's rights." But "there is no threshold level under each individual factor in *Michael J.* that either compels, or forbids, severance." *Christy C.*, 214 Ariz. at 450 ¶ 15, 153 P.3d at 1079. "It is an individualized, fact-specific inquiry." *Id.* The critical factor for the juvenile court was that Father would be released from prison within months after the severance trial, so the court had ample reason to find that ADES had not proven by clear and convincing evidence that Father's incarceration would deprive Child of a normal home for a period of years, even if some of the *Michael J.* factors might counsel termination.

**¶18**        Although the juvenile court did not expressly review or make findings on each *Michael J.* factor other than the length of Father's sentence and his anticipated release date (the fourth *Michael J.* factor), the evidence presented at the trial would have allowed the juvenile court to find that the remaining factors weighed against termination of Father's parental rights. On the first factor—the length and strength of the parent-child relationship when Father was incarcerated—admittedly the evidence showed that Father had no relationship with Child at the beginning of his

prison sentence. But this was because Child was not yet born. And once Child was born, Grandmother actively interfered with Father's efforts to create a bond with Child. *Cf. Calvin B. v. Brittany B.*, 232 Ariz. 292, 293-94 ¶ 1, 304 P.3d 1115, 1116-117 (App. 2013) (holding "that a parent who has persistently and substantially restricted the other parent's interaction with their child may not prove abandonment based on evidence that the other has had only limited involvement with the child"). ADES also refused to give Child any of the letters that Father had written to Child. Thus, the court could have reasonably concluded that Father's incarceration was not the sole cause of the lack of a relationship.

¶**19**　　　On the second factor—the degree to which the parent-child relationship could be continued and nurtured during the incarceration—the court could have reasonably found that Child and Father could build their relationship through telephone calls and letters for the few months until Father's release from prison, and that this could continue while Father resided at a half-way house. On the third factor—the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home—the evidence showed that Child would be twelve years-old by the time Father was released, and the short time Father remained in prison would not deprive Child of a normal home. Father testified that he wanted to initiate a relationship with Child upon his release from prison. Thus, Father will have several years before Child becomes an adult to establish a normal home for her.

¶**20**　　　On the fifth factor—the availability of another parent to provide a normal home life—Mother's whereabouts were unknown, and the juvenile court terminated her parental rights after she did not contest severance. Moreover, although Grandmother had served as a parent for Child and apparently wished to adopt Child, the record shows that Grandmother had difficulty raising Child. Child's guardian ad litem feared that Child would be returned to ADES custody in the future, "whether or not that's after an adoption."

¶**21**　　　On the sixth factor—the effect of deprivation of a parental presence—Child's guardian ad litem stated that Child gave conflicting statements about having Father's rights severed and that she was too immature to know the consequences of severing Father's rights. Because Child might decide that she wants a relationship with Father after contact with him, a possibility that would be foreclosed if severance were granted, the guardian urged that severance be denied. These were valid concerns

about depriving Child of the opportunity of a relationship with Father that the court could have found warranted denying termination.

¶22 Contrary to ADES's argument, reasoned consideration of the *Michael J.* factors in this case does not compel a conclusion that severance is warranted pursuant to § 8–533(B)(4). Based on the evidence presented the trial, the juvenile court did not err in concluding that ADES did not prove that Father's sentence would deprive Child of a normal home for a period of years.

**CONCLUSION**

¶23 For the foregoing reasons, we affirm.

