NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JULIA P., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY,[1] J.B., J.B., *Appellees.*

No. 1 CA-JV 14-0278

FILED 5-14-2015

Appeal from the Superior Court in Maricopa County
No. JD510478
The Honorable Karen O'Connor, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Michael F. Valenzuela
*Counsel for Appellee Department of Child Safety*

---

[1]	Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety ("DCS") is substituted for the Arizona Department of Economic Security in this matter. *See* ARCAP 27. For ease of reference, we refer to DCS throughout this decision.

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Maurice Portley and Judge John C. Gemmill joined.

---

**B R O W N**, Judge:

¶1        Julia P. ("Mother") appeals the juvenile court's order terminating her parental rights to her daughter, born in 2012, ("Daughter") and her son, born in 2013 ("Son").  For the following reasons, we affirm.

## BACKGROUND

¶2        Daughter and Son are the biological children of Mother and Jason B. ("Father").[2]  In November 2012, DCS received a report that Mother and Father were using methamphetamine in Daughter's presence.    DCS conducted a welfare check, but found no drugs.  Several weeks later, DCS received two additional reports alleging that Mother and Father were homeless and continuing to use drugs around Daughter, and that Mother had been asking relatives to take custody of Daughter.

¶3        DCS took Daughter into temporary custody on January 23, 2013 and promptly filed a dependency petition alleging Mother had neglected Daughter by abusing drugs, engaging in criminal activity, and failing to meet Daughter's needs.  Mother denied the allegations but submitted the issue of dependency to the juvenile court for determination.  Mother agreed to participate in parent aide services, substance abuse treatment through TERROS, and substance abuse testing.  On March 4, 2013, while the dependency petition was still pending, Mother was arrested and jailed based on felony forgery charges.  The next day the juvenile court found Daughter dependent as to Mother and ordered a case plan of family reunification.

¶4        Mother gave birth to Son while she was in jail awaiting sentencing.  DCS took temporary custody of Son and filed a dependency petition alleging that Son was dependent as to Mother due to her

---

[2]        The juvenile court also terminated Father's parental rights to the children; however, he is not a party to this appeal.

incarceration and her open dependency regarding Daughter. In September 2013, Mother was sentenced to six years' imprisonment after pleading guilty to two counts of forgery.

¶5        Given Mother's prison sentence, DCS moved to terminate her parental rights as to Daughter, alleging grounds for termination under Arizona Revised Statutes ("A.R.S.") sections 8-533(B)(3) (chronic substance abuse) and -533(B)(4) (length of prison sentence). A few months later, Daughter was placed with her half-sibling in California. In January 2014, the juvenile court found Son dependent as to Mother and set a case plan of severance and adoption. Son was also placed in California, with Daughter. Soon thereafter, DCS moved to terminate Mother's parental rights as to Son, alleging the same grounds.

¶6        Mother contested termination of her parental rights to the children and appeared telephonically at the termination hearing. DCS presented testimony from Deborah Ellis, the case manager assigned to the children's case, as well as documentary evidence consisting of DCS reports and minute entries from Mother's criminal proceedings. According to Ellis, Mother reported to the DCS investigator that she had used methamphetamines a day or two before she was arrested and incarcerated in March 2013. Ellis explained that prior to her incarceration, Mother had been offered substance abuse testing but did not participate in the service. Ellis further testified that DCS did not offer Mother substance abuse treatment or other services in jail, but that DCS does encourage incarcerated parents to take advantage of the services offered in jail and offers additional parent aide services upon their release.

¶7        DCS also presented evidence that a few years prior to Daughter's birth, Mother was convicted of burglary, plead guilty to two counts of possession of drug paraphernalia and was sentenced to 3.5 years' imprisonment. Based on Mother's prior history of arrest for drug-related crimes, Ellis opined that, upon her release from prison Mother would be unable to parent the children due to her substance abuse and that her substance abuse would continue for a prolonged, indeterminate period.

¶8        Regarding the relationship between Mother and the children, Ellis testified that Daughter came into DCS's care when she was eight months old, and that Mother had been consistent with her weekly visitations with Daughter until Mother was incarcerated in March 2013. However, Ellis explained that the children could not visit Mother in prison because they were in an out-of-state placement with their half-sibling. When asked whether DCS considered placing the children with Mother's

or Father's relatives in Arizona, Ellis explained that the relatives were unable to accept the children. DCS also presented evidence that because Father had been incarcerated since 2013 and was serving a six-year sentence, he could not parent the children. Ellis opined that a parent-child relationship between Mother and the children could not be continued while Mother was incarcerated, and that, given the children's young ages, Mother's incarceration would very likely deprive the children of a normal home. Ellis further opined that termination was in the children's best interests because an adoptive placement had been identified and the children would benefit from the stability and permanency of a loving home.

¶9            Mother testified that she last used an illegal substance in June 2011 and was not using drugs in prison. She stated that she developed a bond with Daughter during the eight months she was in Mother's care and that she felt a bond with Son, although he was removed from her care only a few days after his birth. Despite acknowledging that she was permitted to have in-person visits and telephonic conversations while in prison, Mother testified that she had "never been given [an] opportunity" to have visitation or telephonic contact with the children, but wrote to them "[p]retty much every single week."

¶10           The juvenile court granted the motions to terminate as to both children on each of the alleged grounds. Regarding substance abuse, the court found that despite Mother denying she used drugs in March 2013 as indicated in DCS's report, Mother was unable to demonstrate that she can remain sober outside a prison environment. Based on her history of drug-related arrests and post-incarceration relapse, the court determined that reasonable grounds existed to believe that sobriety remains an issue for Mother. Regarding length of sentence, the court found that Mother's six-year sentence prevents her from offering a normal home for the children and from establishing any meaningful relationship with the children, given their young ages. The court also determined that severance was in the children's best interests. Mother timely appealed.

**DISCUSSION**

¶11           To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one of the statutory grounds for termination enumerated in A.R.S. § 8–533(B) and must find by a preponderance of the evidence that termination would serve the child's best interests. Ariz. R.P. Juv. Ct. 66(C); *Michael J. v. Ariz. Dep't of Econ. Sec.,* 196 Ariz. 246, 249, ¶ 12 (2000). We review the evidence and draw all reasonable inferences in the light most favorable to upholding the juvenile

court's factual findings. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002).

**¶12**        Mother argues that the juvenile court erred in terminating her parental rights to the children based on the length of her incarceration because insufficient evidence was presented to support the court's finding.[3] To establish the statutory ground relating to length of sentence, DCS was required to prove by clear and convincing evidence that Mother (1) has been deprived of her civil liberties due to a felony conviction; and (2) the length of her sentence will deprive the children of a normal home for a period of years.  A.R.S. § 8-533(B)(4).

**¶13**        The length of a parent's sentence, alone, is not dispositive, *Jesus M.*, 203 Ariz. at 281, ¶ 9, and the juvenile court must engage in a fact-intensive analysis of all relevant circumstances, including:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Id.* (quoting *Michael J.*, 196 Ariz. at 251–52, ¶ 29).  However, the juvenile court need not make explicit factual findings regarding each factor.  *Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 441, ¶ 14 (App. 2014).

**¶14**        Reasonable evidence was presented to support each of the six *Michael J.* factors.  DCS presented evidence, and Mother admitted, that she was given a six-year prison sentence after pleading guilty to forgery. Regarding factors one and three, Ellis testified (and Mother does not dispute) that Daughter was removed from Mother's care at eight months old and Son, who was born while Mother was incarcerated, was removed from her care after only a few days.  Despite Mother's assertions that she felt a bond with both her children, the undisputed facts indicate that the children remained in her care for a very short period of time.  Ellis testified that due to the children's very young age, Mother's incarceration would

---

[3]        Mother does not challenge the juvenile court's finding that termination of her parental rights was in the children's best interests.

likely deprive them of a normal home.  Nor could Father provide a normal home to the children, as the evidence showed he is also incarcerated and serving a six-year sentence.

**¶15**　　　　Regarding factors two and six, relating to the nurturing of the parent-child relationships between Mother and the children, Ellis testified that Mother initially attended visitation with Daughter but that Mother has had no visitation or telephone contact with the children since her incarceration.  Mother asserted at the hearing and reiterates on appeal that she felt a bond with both children and that DCS actively prevented her from developing a relationship with the children while incarcerated.  Specifically, Mother argues that if DCS had placed her children with a placement in Arizona, she would have been able to continue her relationship with the children.  However, Mother acknowledged that she was allowed to have visitors and to make phone calls while in prison.  And Ellis explained that DCS had investigated the Arizona placements suggested by Mother and Father, but those prospective placements were unable to take the children, so DCS elected to place the children with their half-sibling in California.

**¶16**　　　　We find reasonable evidence in the record supporting the juvenile court's finding that Mother's incarceration will deprive her children of a normal home for a period of years.  The court therefore did not err in ordering termination of Mother's parental rights to the children pursuant to A.R.S. § 8-533(B)(4).  Accordingly, we need not address Mother's contention that the court erred in finding that DCS proved by clear and convincing evidence that Mother has a chronic history of substance abuse that is likely to continue for a prolonged period under A.R.S. § 8-533(B)(3).  *See Jesus M.*, 203 Ariz. at 280, ¶ 3 ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

**CONCLUSION**

**¶17** We affirm the juvenile court's order terminating Mother's parental rights.



Ruth A. Willingham · Clerk of the Court
FILED : ama