NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

JESSICA S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, T.F.,
*Appellees*.

No. 1 CA-JV 17-0139
FILED 11-16-2017

---

Appeal from the Superior Court in Mohave County
No. L8015JD201607007
The Honorable Douglas Camacho, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda L. Adams
*Counsel for Appellee, Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Margaret H. Downie (retired) joined.

---

**B R O W N**, Judge:

**¶1**    Jessica S. ("Mother") appeals the termination of her parental rights to her child, T.F., who was born in 2013. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**    In June 2012, prior to their marriage, Mother and Father were charged with several drug-related offenses. A few weeks later, Mother posted bond, married Father, and conceived the child.[1] In September 2013, less than four months after the child's birth, Mother pled guilty to possession of dangerous drugs for sale (methamphetamine), a class 2 felony, and was taken into custody. In October, she was sentenced to prison for five years.

**¶3**    Over the next two years, the child alternated between living with Father and paternal grandmother ("Grandmother"), with Grandmother being the primary caretaker. In February 2016, Father was arrested and the Department of Child Safety ("DCS") took custody of the child, placing him with Grandmother. DCS then filed a petition alleging the child was dependent as to both parents, which the superior court granted. While incarcerated, Mother completed a parenting course, wrote letters to the child, and had brief conversations with him by phone.

**¶4**    In August 2016, DCS filed a motion to terminate Mother's parental rights based on the length of her imprisonment pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(4). Following a contested hearing in January 2017, the superior court granted the motion, finding that DCS proved the statutory ground by clear and convincing

---

[1]  The superior court also terminated Father's parental rights but he is not a party to this appeal.

evidence and that termination was in the child's best interests. This timely appeal followed.

## DISCUSSION

¶5          To terminate parental rights, the superior court must find by clear and convincing evidence the existence of at least one of the statutory grounds for termination enumerated in A.R.S. § 8-533(B), and must also find by a preponderance of the evidence that termination is in the child's best interests. Ariz. R.P. Juv. Ct. 66(C); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). We view the evidence and reasonable inferences in the light most favorable to sustaining the superior court's termination order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). We will affirm the court's order if it is supported by reasonable evidence. *Id.*

¶6          Mother argues the superior court erred by terminating her parental rights under A.R.S. § 8-533(B)(4) because the length of her prison sentence will not deprive the child of a normal home for a period of years. To establish the statutory ground relating to length of sentence, DCS was required to prove by clear and convincing evidence that Mother (1) has been deprived of her civil liberties due to a felony conviction and (2) the length of her sentence will deprive the child of a normal home for a period of years. A.R.S. § 8-533(B)(4).

¶7          The length of a parent's sentence, alone is not dispositive, *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 281, ¶ 9 (App. 2002), and the superior court must engage in a fact-intensive analysis of all "relevant factors", including:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J.*, 196 Ariz. at 251-52, ¶ 29.

¶8          Although specific findings addressing the *Michael J.* factors were not included in the termination order, the court addressed them on

the record at the conclusion of the hearing. First, the child was less than four months old when Mother was incarcerated for her conviction of possession of dangerous drugs for sale. Noting that there are "huge developmental reasons why a child would need to be with a parent," the court explained that the child "does not remember anything about whatever relationship may have existed" before Mother's incarceration. Second, the court found that if the child were older, then letters and phone calls would be more meaningful to him. Third, the child has essentially been deprived of a normal home throughout his entire life, with Grandmother having provided the bulk of parental responsibilities. Fourth, Mother was sentenced to five years' imprisonment with the possibility of early release as soon as June 2017, but nothing presented to the court at the termination hearing indicated that Mother would in fact be approved for early release. Fifth, while Father was available to provide a normal home life, he essentially failed to do so. Sixth, the court found that deprivation of a parental presence did not have much of an impact on the child because of Mother's limited involvement in his life.

¶9        The superior court's findings are supported by the record, and Mother does not contend otherwise. Instead, she argues that DCS interfered with her efforts to maintain an existing relationship with the child because she was denied in-person visitation, relying on *Michael M. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 198, 200, ¶ 8 (App. 2002). In that case, a newborn child was adjudicated dependent when the father was held in jail for an alleged crime. *Id.* at 198, ¶¶ 1, 2. During his incarceration, the father promptly requested visitation with the child, whom he had never seen. *Id.* at ¶¶ 1, 3. The superior court denied father's multiple requests to see the child. *Id.* at 198-200, ¶¶ 3-7. On appeal, this court reversed, finding there was no evidence supporting the superior court's "belief" that visitation was not in the child's best interests, especially when the grandparents were willing to transport the child to the jail. *Id.* at 201, ¶ 11.

¶10        Here, DCS acknowledged at the termination hearing that Mother requested visitation, but as explained by the case worker, the request was denied because DCS did not believe "it was appropriate for a child of that age." Mother has not directed us to any conflicting evidence. And, unlike the father in *Michael M.*, who promptly and actively requested visitation with his newborn child, Mother did not ask the court to order visitation until November 2016—approximately three months after DCS moved to terminate her parental rights. Further, the father in *Michael M.* was in jail pending charges whereas in this case Mother was convicted and serving her sentence. Based on these facts, Mother has not shown how the court abused its discretion in not granting her request for visitation.

¶11        Mother also argues termination was improper because her early release date was five months from the date of the severance adjudication and therefore the child would not be deprived of a normal home for a period of years, citing *Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437 (App. 2014).   In that case, DCS's predecessor, the Arizona Department of Economic Security ("ADES"), appealed the superior court's decision denying ADES's request to sever the father's parental rights based on the length of his incarceration.  *Id.* at 438, ¶ 1.  Affirming the superior court's ruling, this court noted that the father was scheduled to be released early from confinement, which was seven months from the date of the severance trial, and that an anticipated release date is one factor a court should consider in determining whether termination is proper.  *Id.* at 440-41, ¶¶ 14-16.

¶12        *Rocky J.* is not controlling here.   As the superior court explained, Mother has not been approved for early release.  Second, *Rocky J.* does not mandate that termination is improper if the parent's release date is quickly approaching.  An anticipated release date is only one of the relevant factors a court considers in light of the unique facts present in each individual case.  Here, the superior court did not abuse its discretion when it terminated Mother's parental rights despite the possibility of Mother's early release. *Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 214, ¶ 8 (App. 2016) ("No authority requires the court to presume an early release.").

¶13        Mother also argues that the superior court erred when it found that termination was in the child's best interests.  To establish termination of parental rights would be in a child's best interests, the court must find that the child will "derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004).   "In making that determination, the juvenile court may consider evidence that the child is adoptable or that an existing placement is meeting the needs of the child." *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 288, ¶ 26 (App. 2011). Here, the court found termination was in the child's best interests because he is adoptable and termination would further the plan of adoption, which would provide the child with permanency and stability.

¶14        Mother argues the child will not be harmed if her parental rights are kept intact because she desires to have the child in her life and has made, and will continue to make, lifestyle changes.  We acknowledge the positive changes Mother has made, but that does not affect the posture of this case.  The child is adoptable and termination would further the plan of adoption.  Grandmother, who has primarily cared for and bonded with

him over the last several years, is willing to adopt.  Thus, the court did not err in finding termination is in the child's best interests.

## CONCLUSION

**¶15**  For the foregoing reasons, we affirm the order terminating Mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:   AA