NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

GABRIAL G., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, G.G., *Appellees*.

No. 1 CA-JV 17-0390
FILED 4-24-2018

Appeal from the Superior Court in Maricopa County
No. JD527057
The Honorable David J. Palmer, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee DCS*

## MEMORANDUM DECISION

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Jennifer M. Perkins joined.

J O H N S E N, Judge:

¶1             Gabrial G. ("Father") challenges the superior court's order terminating his parental rights to his daughter, G.G.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2             G.G. was born in January 2003.  In September 2013, the Department of Child Safety ("DCS") took her into care, alleging she was dependent due to Father's incarceration, mental health issues and neglect. The court found her dependent as to Father in May 2014, and the court adopted a family reunification case plan.  In June 2014, G.G. began living with her maternal grandmother, who is the potential adoptive placement.

¶3             In December 2014, over Father's objection, the court approved a change in case plan to severance and adoption.  In May 2015, DCS moved to terminate Father's parental rights, alleging 15 months in out-of-home placement.  *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(8)(c) (2018).[1]  In January 2016, however, on motion by DCS, the superior court changed the case plan to family reunification concurrent with severance and adoption and dismissed the motion for termination.  In August 2016, the court granted DCS's motion to change the case plan back to severance and adoption, and DCS filed a new motion to terminate Father's parental rights based on the length of his felony prison sentence.  *See* A.R.S. § 8-533(B)(4).

¶4             After a hearing in August 2017, the superior court granted the motion to terminate.  This court has jurisdiction over Father's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A) (2018), 12-120.21(A) (2018) and -2101(A) (2018).

---

[1]     Absent material revision after the relevant date, we cite the current version of a statute or rule.

**DISCUSSION**

**¶5**        Termination of parental rights requires clear and convincing evidence of a statutory ground set out in § 8-533(B), *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000), and proof by a preponderance of the evidence that termination is in the best interests of the child, *see Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005).  Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights so long as it is supported by reasonable evidence.  *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).

**¶6**        Father has been incarcerated for at least half of G.G.'s life.  Most recently, in September 2014, Father was sentenced to 4.5 years in prison; he had been in custody for nearly six months before sentencing.  Father's early release date on the 2014 sentence was November 2017; his maximum end date was mid-February 2018.  During his incarceration, Father maintained occasional telephone contact with G.G. and sent letters to her.

**¶7**        Under § 8-533(B)(4), the court may terminate the rights of a parent who is "deprived of civil liberties due to the conviction of a felony" when the parent's prison sentence "is of such length that the child will be deprived of a normal home for a period of years."  Father argues the court erred by granting severance on this ground because he continues to have a relationship with G.G. and because his "anticipated release from incarceration" was just three months after the August 2017 severance hearing.

**¶8**        Our supreme court has ruled that in considering a motion to terminate a parent's rights based on incarceration, the superior court

> should consider all relevant factors, including, but not limited to: (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that

incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J.,* 196 Ariz. at 251-52, ¶ 29.

**¶9** The superior court here expressly listed and considered the *Michael J.* factors based on the evidence presented. In doing so, the court found that although a relationship between Father and G.G. "has existed to some degree," "given [the] gaps due to Father's repeated incarcerations, and the child's desire to have Father's parental rights severed [and] be adopted by her maternal grandmother," "the parent-child relationship [did not] have great strength."

**¶10** The court further found that although Father communicated with G.G. from prison through letters and telephone calls, "that simply does not adequately compensate for Father's absence for a majority of the child's life." Finally, the court noted that the parental rights of G.G.'s mother had been terminated, and as a result, there was no other parent to provide the child with a normal home life: "Father has overwhelmingly not been there to provide a normal parental presence a child needs to grow and mature, to feel safe and secure and provided for financially, emotionally and otherwise."

**¶11** These findings, which the record supports, sufficiently establish grounds for severance under § 8-533(B)(4). *See Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 441, ¶ 17 (App. 2014).

**¶12** Father also argues the superior court erred by finding that severance was in G.G.'s best interests. Father argues he loves the child and demonstrated his ability to care for her when she was in his sole custody for a period of time in 2013. He contends that since his incarceration, he has matured and wants to take responsibility for her.

**¶13** To support a best-interests determination, the evidence must show either that the child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004). The superior court did not err by finding severance was in G.G.'s best interests based on evidence that she had "clearly expressed" a desire to be adopted by her maternal grandmother and that adoption would provide stability, permanence and the potential to maintain relationships with extended family members.

**CONCLUSION**

**¶14**      For the foregoing reasons, we affirm the order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA