NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CHASE M., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.M., *Appellees*.

No. 1 CA-JV 17-0571
FILED 5-22-2018

Appeal from the Superior Court in Maricopa County
No.  JD 24060
The Honorable Jacki Ireland, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge James P. Beene joined.

---

**C A M P B E L L**, Judge:

¶1        Chase M. ("Father") appeals the juvenile court's order terminating his parental rights to his child, J.M. ("Son"). Because we conclude that reasonable evidence supports the juvenile court's findings of the statutory ground of felony conviction depriving the child of a normal home for a period of years, Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(4), and that termination of the parent-child relationship was in Son's best interests, we affirm.[1]

### FACTS AND PROCEDURAL BACKGROUND

¶2        In 2013, Son came into the care of the Department of Child Safety ("DCS") due to neglect by his Mother, and the juvenile court eventually terminated Mother's parental rights. The juvenile court also adjudicated Son dependent as to Father, who was in California at that time. The dependency was based on DCS's allegations that Father had neglected and abandoned Son because he had not parented the child, nor maintained a parental relationship with the child by providing any type of financial support or emotional support by sending letters, cards, or gifts. That same month, DCS moved to terminate Father's parental rights on the ground of abandonment. In November 2014, the juvenile court held a contested severance hearing. The court denied the termination petition.[2]

---

[1] Because we affirm as to A.R.S. § 8-533(B)(4), we do not address Father's argument regarding the 15 months out-of-home placement ground. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000).

[2] At the 2014 contested hearing, DCS also alleged the ground of 15 months in an out-of-home placement, though this allegation is not reflected in the termination petition. The juvenile court's 2014 order denying the petition found termination was not in Son's best interests and DCS had not

CHASE M. v. DCS, J.M.
Decision of the Court

**¶3** In June 2014, in California, Father was arrested for the federal crime of conspiracy to distribute cocaine (the "Federal Offense"). He pled guilty to the Federal Offense in 2015 and was sentenced to 4.75 years of incarceration in a California federal prison. DCS again moved to terminate Father's parental rights in 2017. Citing the Federal Offense, DCS alleged Father was deprived of his civil liberties thus depriving Son of a normal home for a period of years, A.R.S. § 8-533(B)(4), and the ground of 15 months in an out-of-home placement, A.R.S. § 8-533(B)(8)(c).

**¶4** The juvenile court held a contested termination hearing (the "2017 contested hearing"). By that time, Son was nine years old and had been in DCS's care for four years. Father testified that until 2011, he would visit Son, who was living with Mother in California at the time, every other week. But he never lived with Son and had not seen him since 2011, when Son was two years old. The visits stopped when, in 2011, Father was convicted of human trafficking and incarcerated in a California state prison. While Father was incarcerated, Mother took Son to Arizona without informing Father. In 2013, Father was released and unsuccessfully attempted to locate Son.

**¶5** In February 2014, Father discovered Son was in DCS's care in Arizona. Father resumed contact with Son through phone calls and written communication. He also participated in the limited services DCS was able to provide while he was on probation in California.

**¶6** Father testified at the 2017 contested hearing that once he learned Son was in DCS's care, around February 2014, he had "been doing everything [he] could to try and get him out until [he] caught [the Federal Offense.]" DCS presented evidence that Father committed the Federal Offense in June 2014, after he learned Son was in DCS's care.[3] Father's participation in services, such as telephonic family therapy with Son, thus ended.

**¶7** Father did continue to call Son and send him written communications during his incarceration for the Federal Offense. Father testified he also participated in services and programs offered at the federal

proven abandonment, but does not make any reference to the 15 months in an out-of-home placement ground.

[3] The DCS caseworker testified that Father was already in federal custody when he learned Son was in DCS's care. The record demonstrates this is incorrect. *Supra* ¶ 3.

prison, including drug abuse services, vocational training, and parenting classes and programs. Father admitted he had not previously made Son a priority in his life, but testified he had now changed his "way of thinking" and "way of doing."

¶8 Father testified he expected he would not serve his full sentence, but would be released for good behavior to a halfway house within 50 days of the termination hearing. Shortly thereafter, he hoped to obtain employment. He acknowledged he would still be subject to four years of federal probation in California, with the length of his probation and his ability to travel to Arizona remaining with the discretion of his probation officer. The DCS caseworker testified Father would not be able to parent upon his release because he had failed to demonstrate he could find a job and stay away from crime, and generally lacked stability.

¶9 The juvenile court found DCS had proven both grounds by clear and convincing evidence and that termination of Father's parental rights was in Son's best interests by a preponderance of the evidence.

## DISCUSSION

### I. Deprivation of a Normal Home for a Period of Years

¶10 Father argues that, with one exception, the juvenile court erred in finding that DCS had proven the *Michael J.* factors, *infra* ¶ 12, by finding the ground of termination under A.R.S. § 8-533(B)(4). Viewing the evidence and all reasonable inferences therefrom in a light most favorable to upholding the juvenile court's termination order, *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009), we disagree.

¶11 To terminate the parent-child relationship, the juvenile court is required to find at least one statutory termination ground under A.R.S. § 8-533 by clear and convincing evidence, A.R.S. § 8-537(B), and by a preponderance of the evidence that termination of the parent-child relationship is in a child's best interests, *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We will affirm the juvenile court's termination order if it is supported by reasonable evidence. *Jordan C.*, 223 Ariz. at 93, ¶ 18.

¶12 Section 8-533(B)(4) requires the juvenile court to find by clear and convincing evidence that "the parent is deprived of civil liberties due to the conviction of a felony . . . [and] the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." As our supreme court has explained, there exists "no 'bright line' definition of when a sentence is sufficiently long to deprive a child of a

normal home for a period of years" and, thus, each case is considered on its particular facts. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 29 (2000). The juvenile court therefore must consider all relevant factors. *Id.* at 251–52, ¶ 29. This includes the following non-exhaustive list of factors:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Id.*

**¶13** The juvenile court did not explicitly state each *Michael J.* factor, but made supportive findings. *See Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 440-41, ¶¶ 14, 16 (App. 2014). The juvenile court found that Father had been incarcerated in federal prison for a number of years and that he had "never fully parented [Son]." Additionally, Father had "been in and out of the [Son's] life" due to his criminal history and incarcerations. And although Father expected to be released from federal prison early — he had no actual control over his release date. The court also found that, regardless, Father would still be subject to four years of federally supervised release conditions and, thus, during that period would continue to lack control over his ability to travel to Arizona, or to maintain a normal parent-child relationship with Son. Finally, the court noted Son had no other parent that was available to provide a stable home, as Mother's rights had been terminated.

**¶14** Father first argues there was insufficient evidence to support the juvenile court's findings because he has maintained a relationship with Son. To be sure, the record supports that Father continued to maintain some relationship with Son, despite the Felony Offense. *Supra* ¶ 7. But termination under A.R.S. § 8-533(B)(4) involves a fact-intensive inquiry, and "[t]here is no threshold level under each individual factor in *Michael J.* that either compels, or forbids, severance." *Rocky J.*, 234 Ariz. at 441, ¶ 17 (citation omitted).

**¶15** Moreover, the juvenile court is the trier of fact in a termination proceeding and we do not reweigh the evidence. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002) (appellate court does not

reweigh evidence). The juvenile court's conclusion that Father never fully parented Son is supported by reasonable evidence. The record demonstrates Father never lived with Son and he has not seen Son for over seven years—largely due to Father's criminal history. Importantly, Father committed the Felony Offense after finding out that Son was in DCS's care in Arizona, at which point Son had no other available parent because Mother's parental rights had already been terminated. *Supra* ¶ 6.

¶16 Father also argues the court erred because he testified he would be released "only fifty days from the date of the severance adjudication." But under this ground, "[w]hat matters to a dependent child is the total length of time the parent is absent from the family, not the . . . time that may elapse between the conclusion of legal proceedings for severance and the parent's release from prison." *Jesus M.*, 203 Ariz. at 281, ¶ 8. While the juvenile court may consider early release terms, "[n]o authority requires the court to presume an early release." *Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 214, ¶ 8 (App. 2016). Moreover, the juvenile court's findings demonstrate that it did consider the possibility of early release, but weighed that against the federal probation restrictions Father would be subject to in California, thus further affecting his ability to parent.

¶17 Father also argues that the court erred because Son, at age nine, still had "many years before reaching the age of majority . . . affording the Father years in which he would be able to parent his [Son]." The years Father might have left to parent the child lend no support to Father's position. Section 8-533(B)(4) "focuses on the child's needs during the incarceration and not solely on whether the parent would be able to continue the parent-child relationship after release." *Jeffrey P.*, 239 Ariz. at 215, ¶ 14.

¶18 Finally, Father concedes there is no other parent available to provide Son a normal home life because Mother's parental rights are terminated. Accordingly, reasonable evidence supports the juvenile court's findings regarding this statutory ground for termination.

## II. Best Interests

¶19 Father argues the juvenile court erred in determining that termination of his parental rights was in Son's best interests, because he testified that termination was not in Son's best interests because he has a close relationship with Son. That is not born out in the record.

¶20 To show that termination of the parent-child relationship is in a child's best interests, DCS must establish either an affirmative benefit

from termination, or a detriment if the parent-child relationship is not terminated. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 8 (App. 2016). Affirmative benefits include whether the existing placement is meeting the child's needs and whether the child is adoptable. *Audra T. v. Ariz. Dep't of Econ. Sec.,* 194 Ariz. 376, 377, ¶ 5 (App. 1998).

**¶21** DCS presented testimony and evidence that Son had special behavioral and psychiatric needs, and that his adoptive placement was meeting those needs. Further, Father has not demonstrated an ability to meet these needs. In finding termination of Father's parental rights was in Son's best interests, the juvenile court found: Father had never actually parented or lived with the child; child was in an adoptive placement that was meeting the child's needs; and that the child considered the placement to be his home and wanted to be adopted.[4] Father asks this court to reweigh the evidence by giving more weight to his testimony that severing his parental rights was not in Son's best interests and to his bond with Son, which we will not do. *See Jesus M.*, 203 Ariz. at 282, ¶ 12.

## CONCLUSION

**¶22** For the foregoing reasons, we affirm the juvenile court's order terminating Father's parental rights to his child.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[4] In the termination order, the juvenile court order also found Son was "placed with a grandparent or another member of [Son's] extended family including a person who has a significant relationship with Son." The record does not support this finding, as Son has been placed in the same DCS licensed foster home since 2014, and DCS's own records show various unsuccessful attempts to place Son with a family member.