NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
### DIVISION ONE

MALAY'JA D.,
*Appellant*,

v.

DEPARTMENT OF CHILD SAFETY, Z.B.,
*Appellees*.

No. 1 CA-JV 22-0134
FILED 11-17-2022

Appeal from the Superior Court in Maricopa County
No. JD40045
The Honorable Todd F. Lang, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Michelle R. Nimmo
*Counsel for Appellee*

_____

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Michael J. Brown joined.

_____

**M O R S E**, Judge:

¶1        Malay'ja D. ("Mother") appeals from the juvenile court's order terminating her parental rights.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Mother and Zerion B. ("Father") are the biological parents of Z.B., who was born in May 2020.  DCS became involved with the family because both Z.B. and Mother tested positive for THC at the time of Z.B.'s birth.

¶3        Mother admitted to smoking marijuana throughout the pregnancy.  Father acknowledged that he knew about the marijuana use but did not intervene.  Mother also disclosed that she suffers from severe anxiety, and Z.B.'s paternal grandmother ("Grandmother") indicated that Mother may also suffer from bipolar disorder.

¶4        In October 2020, DCS filed a dependency petition based on Mother's substance abuse and mental-health issues.  But DCS did not remove Z.B. from the home at that time.

¶5        Two months later, Mother and Father got into a physical fight.  Grandmother called the police and took Z.B. to stay with his aunt.  Mother and Father were both arrested.  Following the incident, DCS removed Z.B. from his parents' custody and placed him in Grandmother's care for the remainder of the dependency.

¶6        Mother did not contest the dependency petition, and Z.B. was adjudicated dependent in January 2021.  At that time, DCS indicated that reunification would require the parents to: (1) establish a safe and stable home; (2) abstain from abusing illegal substances or prescription drugs; and (3) maintain a home environment that is free from domestic violence.

¶7        Over the course of the dependency, DCS provided Mother with substance-abuse assessments and referrals for supervised visitation,

parent-aide services, and substance-abuse testing and treatment. During Mother's initial substance-abuse assessment, providers referred her for additional domestic-violence counseling.

¶8          Mother did not participate in the required substance-abuse treatment, she consistently avoided substance-abuse testing, and tested positive for THC when she did participate. Mother repeatedly cancelled parent-aide sessions and supervised visits to the point she had no supervised visits with Z.B. in 2021. Mother also failed to act on the referral for domestic-violence counseling.

¶9          In June 2021, Mother unsuccessfully petitioned the court to eliminate the requirement for substance-abuse testing and treatment, and parent-aide services.

¶10         Later that month, without permission, Mother took Z.B. from Grandmother and did not return him until police intervened. Two months later, she again took Z.B. without permission while he was on vacation with Grandmother in Pennsylvania. This time, Mother did not return the child, but police in Pennsylvania eventually located her, retrieved Z.B., and arrested her and Father for kidnapping. Pennsylvania authorities incarcerated Mother for three months. She was released, but the record is not clear on the ultimate resolution of the charges against Mother.

¶11         After her release, Mother still failed to participate in the available services. In December 2021, DCS moved for termination under the nine-month time-in-care ground.

¶12         In April 2022, the juvenile court conducted a termination trial and, in May 2022, issued an order terminating Mother's parental rights. The court found that DCS failed to provide adequate services to address the domestic-violence concerns and declined to consider domestic violence as a circumstance causing the out-of-home placement. However, the court found DCS had provided diligent efforts to address Mother's substance-abuse and mental-health issues.

¶13         The juvenile court also found that termination would be in Z.B.'s best interests because: (1) Grandmother was willing and able to adopt him; (2) adoption would provide him with the added benefit of permanency and stability; and (3) placement with Grandmother would allow him to maintain his relationships with other family members.

¶14         Mother timely appealed the termination order. We have jurisdiction under A.R.S. §§ 8-235 and 12-120.21(A).

**DISCUSSION**

**¶15** Mother argues that the juvenile court erred in finding that DCS met its diligent efforts burden under the time-in-care ground. She also claims the record below was insufficient to support a finding that termination of parental rights was in Z.B.'s best interests. We disagree.

**¶16** Parents possess a fundamental right in the custody and control of their children, but that right is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49, ¶¶ 11-12 (2000). Termination of parental rights is not favored and "generally should be considered only as a last resort." *In re Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 4 (1990).

**¶17** This court views the evidence and reasonable inferences to be drawn from it in the light most favorable to affirming the juvenile court's order. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010). We review the juvenile court's termination decision for an abuse of discretion and will affirm if reasonable evidence supports the court's findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). But we review de novo "legal issues requiring the interpretation and application of § 8-533." *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 580, ¶ 10 (2021) (quoting *Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 440, ¶ 12 (App. 2014)).

**I.     Diligent Efforts.**

**¶18** Mother claims that DCS failed to prove diligent efforts because it did not provide her with domestic-violence services.

**¶19** To pursue termination under the time-in-care ground, DCS must make diligent efforts to provide parents with appropriate reunification services. A.R.S. § 8-533(B)(8). What constitutes a diligent effort will vary by case, but DCS must – at the least – provide services that have a reasonable prospect of success in remedying the circumstances causing the child's out-of-home placement. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 23, ¶ 50 (App. 2019). DCS is not required to "provide every conceivable service" or to "undertake rehabilitative measures that are futile," but it must "'undertake measures with a reasonable prospect of success' in reuniting the family." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 94, ¶ 20 (App. 2009) (quoting *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶¶ 34, 37 (App. 1999)).

**¶20**         In this case, the juvenile court found that DCS failed to provide adequate services to remedy Mother's issues with domestic violence. Accordingly, it discounted domestic violence as a circumstance causing the out-of-home placement and found that termination was appropriate given the other issues that Mother had refused to remedy. If termination was appropriate without consideration of the domestic violence, then the court did not abuse its discretion when it implicitly found that providing domestic-violence services was futile because they would not have reunited the family. *Cf. id.* (noting that measures are not futile if they have "'a reasonable prospect of success' in reuniting the family"). Mother does not challenge the court's findings related to the other circumstances causing the out-of-home placement.

**¶21**         Instead, Mother argues that the juvenile court can only determine futility through the process contained in A.R.S. § 8-846 and Rule 57. We have previously rejected this argument. *See Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 236, ¶ 21 (App. 2011) (finding that failure to follow § 8-846 and Rule 57 did not entitle a mother to reversal of the juvenile court's termination order); *see also Vanessa H. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 252, 256, ¶ 20 (App. 2007) (finding that reunification services on behalf of the mother would have been futile without considering either provision). While the purpose behind these two provisions "is to encourage [DCS] to seek a determination on futility when it appears that reunification services will no longer assist the parent," their language does not suggest "that the juvenile court is prohibited from making a determination after the severance hearing that additional services would have been futile." *Christina G.*, 227 Ariz. at 237, ¶ 25.

**¶22**         If DCS does not follow the § 8-846 procedure, it must prove by clear and convincing evidence at trial that additional rehabilitative services would have been futile. *Mary Ellen C.*, 193 Ariz. at 193, ¶ 42 (App. 1999). Reasonable evidence supports the juvenile court's finding that DCS met its burden. The juvenile court did not abuse its discretion.

**II.     Best Interests of the Child.**

**¶23**         After finding clear and convincing evidence establishing one of the statutory grounds for termination, the court must determine by preponderance of the evidence that termination is in the child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149-50, ¶ 8 (2018). At this stage, "the juvenile court's primary concern . . . is the 'child's interest in stability and security.'" *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 478, ¶ 31 (2022) (quoting *Alma S.*, 245 Ariz. at 150, ¶ 12). "[T]ermination is

in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S.*, 245 Ariz. at 150, ¶ 13.

**¶24** Citing *Timothy B.*, Mother argues that the court's best-interests finding was insufficient because the court provided no case-specific evidence that adoption benefitted the child more than permanent guardianship. 252 Ariz. at 478-79, ¶ 34. Her argument misinterprets that case.

**¶25** In *Timothy B.*, the supreme court recognized that a child's interest in termination may be "a relevant factor under the guardianship statute" and remanded to the juvenile court to consider whether permanent guardianship would be appropriate under the length-of-sentence ground for termination. *Id.* But a child's interest in termination is relevant to the guardianship determination because the court may not establish a permanent guardianship unless "[t]he likelihood that the child would be adopted is remote or termination of parental rights would not be in the child's best interests." A.R.S. § 8-871(A)(4). There is no inverse requirement in the termination statute. *See* A.R.S. § 8-533.

**¶26** In conducting its best-interests inquiry, the court must still "consider the totality of the circumstances existing at the time of the severance determination." *Alma S.*, 245 Ariz. at 150-51, ¶ 13. In some cases, the totality of the circumstances will include a child's interest in maintaining the parental relationship through permanent guardianship. *See Timothy B.*, 252 Ariz. at 478, ¶ 31 (noting that courts should consider whether a child's interests "are served by termination or maintenance of the parent-child relationship"); *see also Santosky v. Kramer*, 455 U.S. 745, 760 (1982) (recognizing a child's interest in preserving the natural relationship with their parents). But that interest is diminished "once a determination of unfitness has been made," *Alma S.*, 245 Ariz. at 151, ¶ 15, and can be overcome by other factors favoring termination, *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98-99, ¶ 12 (App. 2016). The juvenile court properly considered guardianship before finding that Z.B.'s best interests favored termination. Accordingly, we affirm.

## CONCLUSION

**¶27** For the above stated reasons, we affirm the decision of the juvenile court.



AMY M. WOOD • Clerk of the Court
FILED:    AA