NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

AUGUSTIN C., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, E.C., *Appellees*.

No. 1 CA-JV 18-0003
FILED 5-8-2018

Appeal from the Superior Court in Maricopa County
No. JD32580
The Honorable Sally Schneider Duncan, Judge

**AFFIRMED**

COUNSEL

Law Office of Denise L. Carroll, Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Kent E. Cattani joined.

---

**W I N T H R O P**, Judge:

¶1        Augustin C. ("Father") appeals the juvenile court's order severing his parental rights to E.C.  Father argues the court erred in severing his parental rights based on the length of incarceration for a felony conviction and that severance was not in E.C.'s best interest.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        Father is the biological parent of E.C., born in 2013.[1]  After E.C.'s birth, Father lived with E.C. and Mother until he moved out in July 2015.  Father continued to see E.C. every week and provided E.C. with financial support until he was arrested in August 2015, for facilitation of aggravated assault, a class 6 felony and misconduct involving a weapon, a class 4 felony.  Father was subsequently convicted, sentenced to three years in prison, and was incarcerated over the course of the subsequent dependency and severance proceedings.

¶3        In 2016, the Department of Child Safety ("DCS") filed a petition for dependency alleging E.C. was dependent as to Father due to Father's incarceration.  Father contested the petition, but the court ultimately found E.C. dependent as to Father.  DCS then petitioned to sever Father's parental rights based on his incarceration for a felony conviction and alleged severance was in E.C.'s best interest because it would provide her with permanency and stability.  Father contested the severance, and a hearing was held in December 2017.

¶4        At the severance hearing Father testified that although he had been incarcerated during the dependency and severance proceedings, he had previously established a good relationship with E.C. because he lived

---

[1]        The juvenile court also severed the parental rights of E.C.'s biological mother; however, she is not a party to this appeal.

with her during the first two years of her life and then continued to see her on a weekly basis once he moved out. Father further testified that he planned on resuming his previous employment and planned on continuing to care for and financially support E.C. once he was released from prison on April 15, 2018.

¶5 DCS, however, argued that, contrary to his assertions, Father had not established a relationship with E.C. while incarcerated because he had minimal contact with her. The evidence indicated that, while in prison, Father only sent E.C. two letters. Additionally, Father never sent E.C. birthday cards or gifts and never requested Skype calls or visitation. The DCS case manager further testified that, in her opinion, Father was unable to establish a parent-child bond with E.C. because he had been incarcerated for almost one-half of E.C.'s life. DCS additionally argued that it was doubtful that Father would be released from prison on his expected release date because of Father's substantial history of disciplinary violations while incarcerated.

¶6 The juvenile court took the matter under advisement and ultimately severed Father's parental rights based on his length of incarceration. The court specifically found that:

> Father [] has a limited relationship with his child because he had effectively abandoned the child before he was incarcerated in 2016. Further, if Father is released around [April] 2018, he will have been incarcerated for nearly half of his child's life. Furthermore, Father has not made efforts to engage with his child during his incarceration. Finally, Father's child, who is four-years old, has been deprived of a normal home during Father's incarceration, as there is no other parent that is fit to care for the child, and the child is far too young to be without a parent.

¶7 The juvenile court also found that severance of Father's parental rights was in E.C.'s best interest because it would provide her with permanency and stability and further the plan of adoption. Father timely appealed, and we have jurisdiction pursuant to the Arizona Constitution,

Article 6, Section 9; Arizona Revised Statutes ("A.R.S.") section 8-235(A) (2014)[2]; and Arizona Rules of Procedure for the Juvenile Court 103(A).

**ANALYSIS**

¶8 On appeal, Father argues the juvenile court failed to properly consider that Father was scheduled to be released from prison in April 2018, and thus, improperly severed his parental rights based on felony incarceration.

¶9 We view the evidence in the light most favorable to sustaining the juvenile court's order and will only overturn the court's findings if they cannot be supported by reasonable evidence. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010). In conducting that review, however, we do not reweigh the evidence presented at the severance hearing. *See Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 13 (App. 2011) ("The juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." (citation omitted)). Although parents have a fundamental right to raise their children as they see fit, that right is not without limitation. *Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 79, ¶ 14 (App. 2001). To sever this fundamental right, a juvenile court must find by clear and convincing evidence that one of the statutory grounds for severance exists. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).

¶10 As relevant here, a juvenile court may sever a parent's right to his child if the court finds "[t]hat the parent is deprived of civil liberties due to the conviction of a felony . . . [and] the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4) (Supp. 2017). The *Michael J.* court held, however, that incarceration for a period of years is not *per se* grounds for severance of parental rights. 196 Ariz. at 250, ¶ 22. Instead, juvenile courts must consider a non-exhaustive list of factors to determine whether severance is appropriate. *Id.* These factors include:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured

---

[2] We cite the current version of all applicable statutes because no revisions material to this decision have occurred.

during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive that child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Id.* at 251-52, ¶ 29.

**¶11** The *Michael J.* factors do not provide a bright line rule for determining when a court should sever a parent's right to parent his child, but instead serve as a guideline to assist the court in its consideration of the issue. *See Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 440, ¶ 14 (App. 2014). We will affirm a juvenile court's severance order based on length of incarceration even if the court failed to make specific findings as to each *Michael J.* factor so long as the record supports the court's ruling. *Id.* at 441, ¶ 14.

**¶12** Here, the juvenile court found that Father had a limited relationship with E.C. because he was incarcerated for nearly one-half of E.C.'s life. The court additionally found that Father did not make any effort to nurture his relationship with E.C. during his incarceration and that E.C. had been deprived of a normal home due to Father's incarceration. In addition to the court's specific findings, the record supports severance of Father's parental rights based on the length of his incarceration. Father only sent E.C. two letters while incarcerated and Father did not otherwise attempt to communicate with E.C., such as by requesting visits or Skype calls. The DCS case manager additionally testified that Father's incarceration deprived E.C. of a normal home, and that given her age, E.C. needed to be in a household with a parent at home.

**¶13** Moreover, although Father alleged he would be released from prison in April 2018, DCS presented evidence that it was uncertain at best whether Father would be released at that time due to his lengthy history of disciplinary violations while incarcerated. We note that Father is currently released from prison; however, Father's change in custody does not affect the juvenile court's findings. *See Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 214, ¶ 9 (App. 2016) (affirming a juvenile court's severance order, although father was released from prison at the time of the appeal, and calculating the time of incarceration pursuant to § 8-533(B)(4) as the entire time of incarceration, not just the time after DCS filed a severance petition). While juvenile courts may consider the possibility that a parent will be released before his scheduled release date, a parent's impending release is

not dispositive in deciding whether to sever a parent's rights based on length of incarceration for a felony conviction. *Id.* at ¶ 8. Additionally, here, the court considered Father's potential release date of April 2018, before severing his parental rights. The court specifically found that even if Father were to be released from prison in April 2018, he would have, at that time, been incarcerated for about two years, one-half of E.C.'s life. The record, viewed as a whole, fully supports the court's severance of Father's parental rights.

¶14        Father additionally argues that the juvenile court erred in finding severance was in E.C.'s best interest. To sever parental rights, the court must find by a preponderance of the evidence that severance is in the best interest of the child. *Michael J.*, 196 Ariz. at 249, ¶ 12. Accordingly, a court must find either that a child will affirmatively benefit from the severance of a parent's rights or that a continued relationship with a parent will harm the child. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004). Here, the court found that severance was in E.C.'s best interest because it would provide her with permanency and stability. Additionally, the court found that E.C. was currently in an adoptive placement, with her maternal grandmother. Reasonable evidence supports the court's findings.

## CONCLUSION

¶15        The juvenile court's order severing Father's rights to E.C. is affirmed.

