NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RAY M., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, L.M., *Appellees.*

No. 1 CA-JV 18-0320
FILED 1-24-2019

Appeal from the Superior Court in Maricopa County
No. JD33617
The Honorable Sara J. Agne, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Kenton D. Jones joined.

---

**W I N T H R O P**, Judge:

**¶1**        Ray M. ("Father") appeals the juvenile court's order terminating his parental rights to L.M. ("the child").   Father argues insufficient evidence supported: (1) the court's termination of his parental rights due to the length of his incarceration pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(4); and (2) the court's finding that termination of his parental rights was in the best interest of the child.   For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[1]

**¶2**        Jordan S. ("Mother") gave birth to the child in late 2015.  For the first eight months, Mother and Father lived together and cared for the child, but in 2016, Father was convicted of burglary.  He began serving a thirteen and a half years' sentence in July 2016 with the earliest possible release date being January 2027.  His latest release date is 2030.

**¶3**        While Father was incarcerated, Mother left the child at a relative's home and did not return for her.  Mother suffers from bipolar disorder and refuses any type of mental health treatment.  She also has a long history of substance abuse and is currently on probation for drug possession.   The Arizona Department of Child Safety ("DCS") took temporary custody of the child and filed a petition on December 30, 2016, to adjudicate the child dependent as to Mother and Father.  The juvenile court found the child dependent as to both Mother and Father.

**¶4**        In September 2017, DCS moved to change the child's case plan to severance and adoption.  The court initially denied the motion but later

---

[1]     We view these facts in the light most favorable to affirming the juvenile court's order. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

granted DCS' request. Father contested the allegations in the motion to terminate his parental rights.[2]

¶5　　The juvenile court held Father's termination adjudication hearing on June 12, 2018. At the beginning of the hearing and over the objection of DCS, Father's counsel moved to change the child's physical custody, arguing the child should be placed in the care of Mother's aunt. The court then heard testimony regarding both the motion for termination of parental rights and the motion for change in physical custody.

¶6　　Both Father and DCS Specialist Jeffery Hanson ("Hanson") testified. Hanson testified that he did not believe Father ever had a relationship with the child and Father could not establish a normal relationship with the child now due to his incarceration. In addition, Hanson stated he never received communication and/or items—such as cards, letters, or gifts—from Father for the child. Hanson admitted on cross-examination that he never attempted to provide any services to Father or to arrange visits with the child, despite Father's requests for visitation being documented in the child's DCS case file.[3] Ultimately, Hanson opined that it would be in the child's best interest if Father's parental rights were severed, and he referenced the child's various medical needs and her stability at her foster care placement as support for his opinion. Regarding the motion for change in physical custody, Hanson testified it was not in the child's best interest because the change would disrupt her developmental process. At the time of the hearing, the child had lived with the foster family for over a year.

¶7　　Father testified he lived with Mother and the child from the time the child was born until he was incarcerated, and thereafter he had videoconference visits with the child until DCS took custody of her in

---

[2]　　Mother also contested the allegations in the motion but failed to timely appear at the termination adjudication hearing.

[3]　　Hanson testified that he previously agreed to order a psychological evaluation of the child to determine whether visits to Father in prison would be appropriate, but he never initiated the evaluation. The record reflects that the child was only eight months old when Father was incarcerated. By the time of the termination adjudication hearing, she was two years old and only "just beginning to speak and articulate her basic needs and wants using short phrases."

December 2016.  In support of his testimony, he produced photographs of him and the child together before he was incarcerated.  Father also explained he sent multiple letters to the child's first caseworker, which is why Hanson never received any written communication from him.  In addition, Father testified he left one voicemail for Hanson requesting updates on the child and to schedule a visit, but Hanson never responded.  Father stated he did not think severance of his parental rights was in the child's best interest and, but for DCS' failure to respond to his requests, he would still have a relationship with the child.

**¶8**      Ultimately, the motion to change physical custody was denied and the court severed both Mother and Father's parental rights.  Father timely appealed the juvenile court's order.[4]  We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## ANALYSIS

### I.      Standard of Review

**¶9**      Although parents possess a fundamental right to the care, custody, and management of their child, it is not absolute.  *See Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005) (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)).  To sever parental rights, the juvenile court must find by clear and convincing evidence one statutory ground enumerated in A.R.S. § 8-533(B).  *Id.* at ¶ 22.  In addition, the court must find by a preponderance of the evidence that termination is in the best interest of the child.  *Id.*

**¶10**      The juvenile court retains great discretion in weighing and balancing the interests of the child, parent, and state.  *Cochise Cty. Juv. Action No. 5666-J*, 133 Ariz. 157, 160 (1982).  We will not disturb the juvenile court's determination absent an abuse of discretion.  *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002).  Because the juvenile court is in the best position to observe the parties, judge the parties' credibility, and make appropriate factual findings, we will not reweigh the evidence; we will look only to determine if there is evidence to sustain the court's ruling.  *Id.*

---

[4]      Mother originally joined Father in this appeal, but she later requested this court dismiss her from the appeal pursuant to Arizona Rule of Procedure for the Juvenile Court 106(G)(1).

## II. Termination Pursuant to A.R.S. § 8-533(B)(4)

**¶11** Relying on *Arizona Department of Economic Security v. Rocky J.*, 234 Ariz. 437 (App. 2014), Father argues the evidence presented at the termination adjudication hearing required the juvenile court to find against the termination of his parental rights. DCS notes Father does not challenge any of the juvenile court's specific findings but instead asks this court to impermissibly reweigh the evidence and find that the juvenile court erred.

**¶12** Parental rights may be terminated if a parent has been convicted of a felony and will be incarcerated for a length of time that would deprive the child of a normal home with that parent for a period of years. A.R.S. § 8-533(B)(4). There is no "bright line" that determines when a parent's rights should be severed due to the length of their incarceration, *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246 (2000), but "[b]y itself, the length of a parent's sentence is not dispositive," *Jesus M.*, 203 Ariz. at 281, ¶ 9. The Arizona Supreme Court outlined six relevant factors in *Michael J.* to assist the juvenile court in conducting an individualized, fact-specific inquiry when faced with a termination petition based on A.R.S. § 8-533(B)(4). *Michael J.*, 196 Ariz. at 251-52, ¶ 29. The factors include:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Id.*

**¶13** Father argues the circumstances in this case are similar to *Rocky J.*, and therefore the juvenile court should have determined severance was inappropriate. In *Rocky J.*, the father was incarcerated at the time of the child's birth, and the mother abandoned the child. *Rocky J.*, 234 Ariz. at 438-39, ¶¶ 2-4. The court appointed the maternal grandmother as the child's guardian, and she made active efforts to prevent the father from communicating with the child. *Id.* at 439, ¶ 6. One year before the father's release date, the Arizona Department of Economic Security ("ADES") petitioned to terminate both the mother and father's parental rights. *Id.* at ¶ 8. The court ultimately refused to sever the father's parental rights,

finding the *Michael J.* factors weighed in the father's favor. *Id.* at ¶ 10. ADES appealed the decision and this court affirmed the juvenile court's decision. *Id.* at 438, ¶ 1. This court stated, "[a]lthough the juvenile court did not expressly review or make findings on each *Michael J.* factor . . . the evidence presented at the trial would have allowed the juvenile court to find that the remaining factors weighed against termination of [f]ather's parental rights." *Id.* at 441, ¶ 18. Specific to the first factor, this court determined:

> [A]dmittedly the evidence showed that Father had no relationship with Child at the beginning of his prison sentence. But this was because Child was not yet born. And once Child was born, Grandmother actively interfered with Father's efforts to create a bond with Child. . . . ADES also refused to give Child any of the letters that Father had written to Child. Thus, the court could have reasonably concluded that Father's incarceration was not the sole cause of the lack of a relationship.

*Id.* at 442, ¶ 18.

**¶14**        Here, Father asserts that, because Hanson testified he did not facilitate Father's communication with the child, the juvenile court should have found the termination of Father's parental rights was inappropriate due to DCS' interference—just as this court found in *Rocky J.* We disagree with Father's argument because the facts in this case are distinguishable.

**¶15**        In *Rocky J.*, this court did not rely solely on the first factor when making its decision. Instead, the record in that case demonstrated four of the six *Michael J.* factors weighed in the father's favor and therefore supported the juvenile court's decision. *Id.* at 441-42, ¶¶ 18-21. Here, the juvenile court clearly considered the totality of the circumstances and expressly found factors one, two, three, and five weighed in favor of termination; factor six weighed against termination; and factor four weighed neither for nor against termination. The evidentiary record supports the juvenile court's findings; accordingly, it did not abuse its discretion in severing Father's parental rights pursuant to A.R.S. § 8-533(B)(4).

### III.    *Best Interest of the Child*

**¶16**        Father next asserts that DCS failed to prove by a preponderance of the evidence that termination of his parental rights would be in the best interest of the child. Father argues that the child will only be eleven years' old when he is released, therefore, it would be best for

him to resume care for the child when he is released. DCS again argues that Father "does not challenge any of the juvenile court's specific findings; instead, he merely highlights portions of his own testimony . . . and invites this Court to reweigh the evidence and reach a different [conclusion]."

**¶17** To support a best interest finding, DCS must prove that the child will affirmatively benefit from the termination or be harmed by the continuation of the relationship. *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). The best interest requirement may be met if, for example, the petitioner proves a current adoptive plan exists for the child, *id.* at 6, or demonstrates the child is adoptable, *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994).

**¶18** In the termination order, the juvenile court found that the child was adoptable at the time of severance and continuing the parent-child relationship would be detrimental because neither Mother nor Father could provide a safe and stable environment for the child in the near future. Although adoptive parents had not been found at the time of severance, the juvenile court concluded active efforts were being made to find an adoptive placement for the child, including the foster parents and relatives of Mother and Father.

**¶19** On this record, we find the juvenile court did not abuse its discretion in finding that severance of Father's parental rights was in the child's best interest.

## CONCLUSION

**¶20** The juvenile court's order severing Father's parental rights is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA