NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DANIEL S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, R.B., L.S., *Appellees*.

No. 1 CA-JV 19-0004
FILED: 7-23-2019

Appeal from the Superior Court in Maricopa County
No. JD538162
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Michael J. Brown and Judge Samuel A. Thumma joined.

---

**P E R K I N S**, Judge:

¶1        Daniel S. ("Father") appeals the juvenile court's order terminating his parental relationship with R.B. and L.S. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        Father and Rachel D. ("Mother") are the natural parents of R.B., born in April 2008, and L.S., born in May 2011. The juvenile court terminated Mother's parental rights, and she is not a party to this appeal. For over fifteen years, Mother abused drugs and alcohol, and for over eleven years, the parents engaged in an "on again, off again" relationship. They repeatedly engaged in domestic violence, separated, and then moved back in together.

¶3        In October 2015, the parents completed a legal decision-making and parenting time agreement, but in July 2016, Father sought an order to temporarily cancel Mother's parenting time and award him full legal decision-making for the children. In his request, Father stated that "Mother has been strung out on drugs and is a threat to the children. She is violent and suicidal and she bit my finger. The police were called and she had to be removed from my property." He also stated that Mother tried to jump from his vehicle while the children were in the car. Maternal grandparents filed for temporary custody of the children, citing concerns about abuse and neglect from Father. The family court temporarily awarded Father sole legal decision-making and allowed Mother supervised parenting time only.

¶4        In December 2016, the children's best-interests attorney, appointed by the family court, filed a dependency petition for the children. The attorney alleged that Mother continued abusing alcohol and the parents continued to engage in domestic violence. The petition also alleged that in October 2016 Mother drank vodka, grabbed a knife, and threatened to harm herself in front of the children. The next month, Father was arrested

for disorderly conduct after fighting with another man at Mother's residence. As a result, in December 2016 the Department of Child Safety ("DCS") took custody of the children.

¶5        The juvenile court eventually found the children dependent as to Father and set a case plan of family reunification. DCS asked Father to submit to rule-out urinalysis tests through TASC and referred him for a psychological evaluation. DCS also provided Father with Ph.D.-level counseling, a parent aide with visitation, and resources for parenting classes in the community.

¶6        In February 2017, police arrested Father for assault and domestic violence against Mother. Six months later, Father contacted Mother and she pepper sprayed him. Despite these incidents, Father and Mother carried on their cyclical relationship. Father's criminal probation terms required him to complete anger management and domestic violence classes. In May 2017, Father completed a psychological evaluation with Doctor Gregory Novie. Novie concluded that Father did not understand the impact that domestic violence had on the children and they would be at risk in his care if he allowed Mother around them.

¶7        Father eventually completed all services, and in early 2018, began some unsupervised visits with the children. DCS stopped the visits soon afterwards because Father maintained a relationship with Mother, who still struggled with addiction. At a meeting in May 2018, DCS expressed its concerns to Father that he keep Mother away from the children. Rather than address these concerns, he stated that the parents would always love each other. In July, the juvenile court changed the case plan to termination and adoption and DCS then moved to terminate Father's parental rights under the ground of 15 months' time in care. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(8)(c). At a meeting in October, Father and Mother arrived holding hands and informed DCS that they were in a relationship and living together.

¶8        In December 2018, the juvenile court held a contested termination hearing and granted DCS's motion. The court found that Father failed to make the behavioral changes necessary to show that he could safely parent the children. Specifically, the court found that Father "lack[s] insight into the effects [that] Mother's substance abuse and acts of domestic violence [have] on the children." The court also found termination to be in the children's best interests because their current placement was meeting their needs and they were otherwise adoptable. Father timely appeals.

**DISCUSSION**

¶9   To terminate a parent-child relationship, the juvenile court must find at least one statutory ground under A.R.S. § 8-533(B) by clear and convincing evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). The court must also find termination is in the child's best interests by a preponderance of the evidence. *Id.* We review the court's termination order for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). The juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004).

### I.  Termination Ground.

¶10   The juvenile court may terminate parental rights under the fifteen-month out-of-home placement ground if it finds that: (1) "[t]he child has been in an out-of-home placement for a cumulative total period of fifteen months or longer"; (2) "the parent has been unable to remedy the circumstances" that cause the out-of-home placement; and (3) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c). The court must also find that DCS made a diligent effort to provide appropriate reunification services. A.R.S. § 8-533(B)(8).

¶11   As to the statutory ground, Father challenges only the juvenile court's finding that a substantial likelihood exists that he will not be capable of exercising proper and effective parental care and control in the near future. The court found that Father could not make the necessary behavioral changes to safely parent the children because he was unable to discern that Mother's domestic violence and substance abuse had negative effects on the children. The court also found that the parents' "domestic violence relationship presents a significant risk to the children" and there was a "significant likelihood that Father [would] maintain a relationship with Mother moving forward." Reasonable evidence supports the court's findings.

¶12   When DCS took custody of the children, the parents had engaged in domestic violence and Mother was abusing alcohol and drugs. Father and Mother continued their pattern of domestic violence through early 2017. Father then participated in services, including Ph.D.-level therapy and classes for domestic violence and anger management. Despite

his completion of services, the court found Father was unable to place the children's needs above his dysfunctional relationship with Mother. *See Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 20 (App. 2013) (termination appropriate when parent has "not benefitted from the services and additional services would have been futile").

**¶13**       Father acknowledged that to safely parent the children, he "just [had] to get away from" Mother and couldn't "have anything to do with her whatsoever" if she was "drinking or on drugs." The record reasonably supports conclusions that Mother's substance abuse was a trigger for the parents' domestic violence and Mother had been unable to maintain sobriety for over fifteen years. Although Mother participated in several detoxification and inpatient programs in the past, she continually relapsed. Mother abused substances throughout the dependency, and Father admitted that she had at least two relapses in the year before the termination hearing. She came nowhere near establishing a year of sobriety, the amount of time her evaluating psychologist recommended. Mother also accrued charges for driving under the influence, with the most recent charge occurring in 2018, during this dependency. Yet Father maintained a relationship with her.

**¶14**       At times during the dependency, Father enabled Mother by giving her money, which she spent on alcohol. Although Father progressed to unsupervised visits, he maintained a relationship with Mother and eventually allowed her to move in with him. As late as October 2018—two months before the termination hearing—Father told DCS that he loved Mother and the parents "didn't understand why [DCS] was maliciously trying to break them up." They remained a relationship and lived together at the time of the termination hearing. Father further admitted that had Mother contested the termination of her parental rights, he would "still hope [they could] work things out," and believed that Mother had overcome her addictions.

**¶15**       Although Father testified that he would not allow Mother to be around the children when she was drinking or on drugs, it was reasonable for the court to find that his actions throughout the dependency contradicted his testimony. *See Sandra R. v. Dep't of Child Safety*, 246 Ariz. 180, ___, ¶ 6 (App. 2019) (juvenile court is in the best position to weigh the evidence). For instance, Father did not explain how he would protect the children from Mother while maintaining a relationship with her, other than testifying that she was "willing to move out." Additionally, Father stated he "can usually tell" when Mother is drunk but not when "she's only had a

couple." He testified, "It will seem like she's straight for one second and then all of a sudden she—like anyone—you can tell she's drunk."

¶16 Father was unable to acknowledge his role in the parents' domestic violence or its effect on the children. The children told DCS that they had witnessed domestic violence between the parents, but Father denied the parents ever fought in front of them. When asked about the events that led to the parents' domestic violence incidents, he testified he had no recollection of them. He also testified that he found the domestic violence classes to be unhelpful and "a real joke," and that he was "baffled [about] why [he's] been going through this [dependency] for two years." For all these reasons, Novie gave a guarded prognosis for Father's future ability to parent the children and agreed that Father cannot safely parent if he remains in a relationship with Mother. Both Novie and the case manager concluded that Father would put the children at risk because he lacked insight into the dangers inherent in his volatile, ongoing relationship with Mother.

## II.     Best Interests.

¶17 Father also challenges the juvenile court's best-interests finding. Specifically, he argues that he recognized the need to keep Mother away from the children if she was intoxicated, that he and the children share a bond, and that DCS never allowed him the opportunity to demonstrate the knowledge he learned from completing his services.

¶18 Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court proceeds to balance the unfit parent's "interest in the care and custody of his or her child . . . against the independent and often adverse interests of the child in a safe and stable home life." *Kent K.*, 210 Ariz. at 286, ¶ 35 (citations omitted). "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990) (emphasis omitted). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018). Relevant factors in this determination include whether the current placement is meeting the child's needs, an adoption plan is in place, and the child is adoptable. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3–4, ¶ 12 (2016). Although a factor to consider, a bond between the parent and child

is not dispositive of the best-interests issue. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98–99, ¶ 12 (App. 2016).

**¶19** The juvenile court considered the bond Father had with the children and found that "[w]hile there is no dispute that Father loves his children, he has not demonstrated insight into the risk his relationship with Mother poses to the children." Reasonable evidence supports this finding. Indeed, Father had many opportunities to demonstrate that he could protect the children from Mother, but throughout the dependency he maintained a relationship with her, even while she was still abusing alcohol. Citing his own testimony, Father asserts that he recognized the need to protect the children from Mother. However, the court weighed Father's testimony against the other evidence presented. Because reasonable evidence supports the court's findings, we will not reweigh them on appeal. *See Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 440, ¶ 12 (App. 2014).

**¶20** The court also found that severance would benefit the children because they lived with relatives who wished to adopt them and who were providing for their needs. By the time of the termination hearing, they had been in an out-of-home placement for two years, and the case manager testified that severance would provide them with permanency and stability.

## CONCLUSION

**¶21** We affirm the order terminating Father's parental rights.

