NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JESSI N., RYAN J., *Appellants,*

*v.*

DEPARTMENT OF CHILD SAFETY, D.C., S.J., *Appellees.*

No. 1 CA-JV 19-0130
FILED 2-4-2020

Appeal from the Superior Court in Maricopa County
No. JD38029
The Honorable M. Scott McCoy, Judge

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant Jessi N.*

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant Ryan J.*

Arizona Attorney General's Office, Phoenix
By Doriane F. Zwillinger
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge David B. Gass delivered the decision of the Court, in which Acting Presiding Judge David D. Weinzweig and Chief Judge Peter B. Swann joined.

---

**G A S S**, Judge:

**¶1**　　　　Ryan J. (father) appeals the superior court's order terminating his parental rights to S.J., his biological child. Jessi N. (mother) also appeals the superior court's order terminating her parental rights to two biological children, S.J. and D.C. (collectively, the children). Because reasonable evidence supports the superior court's order, the termination of parental rights is affirmed.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**　　　　Father and mother have a long history of substance abuse. Father also has a criminal history predating S.J.'s birth. In 2014, D.C. was born substance exposed. The superior court adjudicated D.C. dependent. In April 2015, after Mother successfully completed standard outpatient substance-abuse treatment, the Department of Child Safety (DCS) dismissed that earlier dependency.

**¶3**　　　　During mother's pregnancy with S.J., mother abused substances. Father did as well, even though he was on probation for burglary of a pharmacy. Father says he was with mother throughout her pregnancy and was present for S.J.'s birth, but he denied knowing mother was abusing drugs. When S.J. was born in 2017, mother and S.J. both tested positive for methamphetamine. Within two days of S.J.'s birth, father's hair follicle test was positive for methamphetamine, amphetamine, morphine, and heroin.

**¶4**　　　　About three months after S.J.'s birth, the superior court found father violated his probation and ordered him held in the Maricopa County Jail for forty-five days. After forty-five days, father was released to Crossroads, a substance-abuse treatment facility. He remained on probation. After father's release from Crossroads, he continued to engage in criminal activities related to his substance abuse.

¶5            In March 2017, DCS began dependency proceedings against both parents as to S.J. and against mother as to D.C. The superior court adjudicated the children dependent as to mother in June 2017. DCS implemented an in-home dependency with mother and the children living with the children's maternal grandmother. S.J. was adjudicated dependent as to father in September 2017. Because mother continued to test positive for methamphetamine and amphetamine, DCS terminated the in-home dependency and placed the children in maternal grandmother's physical custody.

¶6            In January 2018, father was charged with dangerous drug possession and held at the Maricopa County Jail. He ultimately pled guilty. On November 26, 2018, the criminal court sentenced father to concurrent terms on the 2014 burglary charge and the 2018 dangerous drug possession charge. Father has been incarcerated since that time. Father's earliest release date on those sentences was November 14, 2019; his latest release date is May 26, 2020.

¶7            In November 2018, DCS moved to terminate father's parental rights under A.R.S. § 8-533(B)(4) on the grounds of length of incarceration and fifteen months-in-care. DCS also moved to terminate mother's parental rights on the grounds of chronic substance abuse, nine months' in care, and fifteen months' in care. The superior court held a contested severance trial. The superior court ordered severance on March 12, 2019. Mother moved to set aside the superior court's severance ruling, which the superior court denied.

¶8            In April 2019, the superior court issued a final signed order finding DCS proved all grounds against father and mother by clear and convincing evidence. The superior court also found terminating parental rights was in the children's best interests. The superior court's initial ruling contained an error, so the superior court issued a *nunc pro tunc* order correcting the error in July 2019. Father and mother timely appealed. Father challenges the grounds for severance and the best-interests finding. Mother does not challenge the basis for the severance but argues the superior court erred in finding the severance was in the children's best interests.

**ANALYSIS**

¶9            A superior court may sever a parent's rights if clear and convincing evidence establishes at least one statutory ground. *See* A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005); *see also Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). The superior

court also must find by a preponderance of the evidence termination is in the best interests of the child. *See Kent K.*, 210 Ariz. at 288, ¶ 41. Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights if reasonable evidence supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citations omitted).

I.      Reasonable evidence establishes termination of father's parental rights as to S.J. was proper.

¶10          A parent's rights may be terminated when "the parent is deprived of civil liberties due to the conviction of a felony . . . if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4). In assessing such a claim, the superior court should consider "all relevant factors," including:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J.*, 196 Ariz. at 251-52, ¶ 29. The superior court should consider each factor, but the absence of evidence on any one factor does not prevent a severance based on length of incarceration. *See Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 450, ¶ 15 (App. 2007).

¶11          No one factor in the record is dispositive, but when taken together, they establish reasonable evidence to support the superior court's termination of father's rights. *See Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 441, ¶ 17 (App. 2014). The record establishes father was first incarcerated shortly after S.J.'s birth. S.J. was less than a year old when father was incarcerated the second time. During his initial release from jail until his second incarceration, father had a total of nine in-person visits with S.J. In those visits S.J., an infant, only slept and ate. Father slept through some visits as well. Because of father's incarceration, he has no relationship to continue with S.J. after his release. *See Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 215, ¶ 14 (App. 2016). Additionally, father still needs to resolve

his substance abuse issues before DCS could consider anything more than resuming supervised visits of the type he had before he was incarcerated.

**¶12** During father's incarceration, S.J. had no other parent to provide her a normal home life. Mother continued in her own struggles throughout the dependency. Mother did not complete any services and has not had custody of S.J. since father was incarcerated in 2017. Because of father's incarceration, S.J. is not bonded with him. He has not been able to help S.J. with her emotional and behavioral issues. Father has not been able to provide for her basic needs.

**¶13** Father's incarceration undermined any relationship he might have had with S.J. and prevented him from providing for her needs. *See Jeffrey P.*, 239 Ariz. at 215, ¶ 14; *Rocky J.*, 234 Ariz. at 441, ¶ 17; *Christy C.*, 214 Ariz. at 450, ¶ 15. Though father's sentence was only 2.25 years, that length amounts to most of S.J.'s life. Despite father's pending release, the issue is how long he has been absent, not how long he has until his release. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 281, ¶ 8 (App. 2002).

**¶14** Reasonable evidence supports the superior court's order terminating father's parental rights as to S.J. Accordingly, this court need not reach father's challenge to the superior court's findings regarding S.J.'s fifteen months' in care.

II. Reasonable evidence establishes termination was in the children's best interests.

**¶15** In addition to proving grounds exist for termination, DCS must prove by a preponderance of the evidence terminating a parent's rights would be in the child's best interests. A.R.S. § 8-533(B); *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 4 (1990). If a superior court has found the existence of a statutory ground for termination, the superior court "can presume that the interests of the parent and child diverge." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 12 (2018) (quoting *Kent K.*, 210 Ariz. at 286, ¶ 35).

**¶16** When reasonable evidence supports severance, a child's "interest in stability and security" is the superior court's main concern. *See Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15 (2016) (quoting *Kent K.*, 210 Ariz. at 286, ¶ 34). One factor is the bond between the parent and the child. Father has virtually no bond with S.J. Mother has a stronger bond with D.C. than with S.J., but the bond with both children is weak because of her ongoing absence from their lives.

**¶17** Having extended family members, particularly a grandparent, supports a best-interests finding. A.R.S. § 8-514(B)(2). Maintaining sibling relationships also is a factor supporting a best-interests finding. *See Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 378, ¶ 6 (App. 1998). Maternal grandmother currently has both children, is available as an adoptive home for both, and is meeting their needs. She stands in first preference as a placement. This factor shows the termination is in the children's best interests, because it would allow the children to secure permanency together. *See id.* Maternal grandmother also is well positioned to maintain the children's relationship with extended family members, including paternal family members.

**¶18** If maternal grandmother cannot adopt the children for any reason, DCS has a plan in place. Both children are loving, caring, and adoptable. DCS proved their adoption is likely, and they likely would be adopted together. *See Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 370-71, ¶ 22 (App. 2018) ("When . . . the child's prospective adoption is otherwise legally possible and *likely*, a superior court may find that termination of parental rights, so as to permit adoption, is in the child's best interests.").

## CONCLUSION

**¶19** Father failed to show the superior court's findings were not supported by trial evidence or otherwise were an abuse of discretion. Further reasonable evidence supports the superior court's order terminating father's and mother's parental rights based on the children's best interests. The superior court's order terminating father's parental rights to S.J. and mother's parental rights to the children is affirmed.

